TOLLESON *v.* THE PEOPLE'S SAVINGS BANK *et al.*

1. Where, upon a petition against an insolvent corporation for injunction and relief, a receiver appointed by the court applied for an order requiring the president of the corporation to show cause why

he should not be attached for contempt for failing to turn over to the receiver the assets of the corporation, in obedience to a previous order of the court directed to the corporation (of which this president and one other person, the cashier, were the only stock holders), and the president, in answer to the rule *nisi* served upon him, appeared as an individual and responded under oath, cross-examined the witnesses on the hearing and took part in the proceedings, the court had such jurisdiction of him as would authorize it to deal with him as for contempt in not turning over the assets of the corporation, the evidence showing that he had in his possession money of the corporation which he had failed to turn over to the receiver.

2. Though the petition under which the injunction was granted and the receiver appointed, fails to allege the nature, character, quality or quantity of the assets of the corporation, save in certain minor particulars, and though the order of the court committing the president to jail does not show what assets were found to be in his possession or control, yet the petition shows that the corporation had some assets, and the judgment is entitled to the legal presumption that the court ascertained by proper evidence that the president, at the time the rule *nisi* was served upon him, had assets of the corporation which he refused to surrender, and is therefore not void but only irregular; and direction is given for its proper emendation.

(*a*) The president having shown no disposition to comply with the judgment of the court, its irregularity does not entitle him to discharge from custody.

(*b*) The judgment necessarily implied that he was in contempt of court; but the judgment, according to better practice, should show this.

April 14, 1890.

Contempt. Remedies. Equity. Corporations. Parties. Service. Jurisdiction. Pleadings. Judgments. Presumptions. Practice. Before Judge MARSHALL J. CLARKE. Fulton superior court. September term, 1889.

Reported in the decision. And see 83 *Ga.* 499.

JOHN L. HOPKINS & SON, B. H. HILL and R. J. JORDAN, for plaintiff in error.

ABBOTT & SMITH, N. J. & T. A. HAMMOND and FULTON COLVILLE, *contra*.

SIMMONS, Justice.

On the 26th of January, 1889, the People's Savings Bank, a corporation under the laws of Alabama, presented to the judge of the superior court its petition, wherein it alleged that the Mercantile Banking Company, a corporation in the city of Atlanta, was indebted to the petitioner in the sum of $781.84, which was due, and payment of which had been demanded and refused; that of this indebtedness $505 was for one State of Alabama six per cent. bond which the petitioner had purchased for the defendant at its instance and request, paying cash therefor; and that the remainder of the indebtedness was a balance due on collections made by the defendant on account of the petitioner. It was further alleged that by reason of false representations, fraud and deception, the petitioner was induced to credit the defendant and buy for it said State bond; that the bond was bought for and went into the hands of Colvin, who gave the defendant his note therefor, and that the note had not yet become due, but that the defendant claimed to have sold the note, which was denied by the petitioner. It was further alleged that Tolleson and Richards, the alleged president and cashier of the defendant, were the original and only stockholders of said corporation. The petition charged that the defendant owed a large amount of money to its correspondents for collections made and not remitted for; that it was insolvent and was preparing to dispose of its assets by transfer or otherwise, to the injury of the petitioner and other creditors; and that there was an immediate and pressing necessity for the appointment of a receiver to take charge of all the defendant's assets and hold the same for the benefit of creditors; that the only available assets of the defendant were its office furniture and safe, but that the defendant received by every mail large remittances in collections which it failed to apply to its

creditors.    The prayer of the petition was, that a temporary receiver be appointed to take charge of the assets and all the property of the defendant, books of account, choses in action, credits of every kind, and hold the same until the hearing; that injunction issue, restraining the defendant, its agents and officers, from interfering in any manner with the assets, disposing of the same or making any collection thereof, and that they be required to turn over to the receiver to be appointed all of the defendant's assets and property of every kind; and that the petitioner have a decree turning over to it the proceeds of said note to Colvin, if the same could be done, and if not, that the petitioner have judgment for its entire debt against the defendant.

When this petition was presented to the judge of the superior court, he ordered that the defendant show cause on the 30th instant at nine o'clock A. M., why an injunction should not issue and a receiver be appointed as prayed for in the bill; and he also appointed a temporary receiver to take charge of all the assets of the defendant, to hold until the further order of the court; and that the defendant turn over all the assets belonging to it in accordance with the prayer of the bill.    On the 28th of January the receiver reported to the court that he had demanded of Tolleson, the president of the defendant corporation, possession of all the assets and property of every kind belonging to it; that Tolleson stated that he was in possession of everything, or words to that effect, but only turned over a small number of notes and bills in the main past due, of small amounts and of nominal value, and the books of the corporation; and that he failed to turn over any money or property representing the capital stock, or make any excuse for such failure.    He further represented that to the best of his knowledge, information and belief, Tolleson had not in good faith complied with the order of the court

in turning over the assets of the defendant to him; and he stated his reasons for this belief. He prayed that an order might issue, requiring Tolleson to show cause *instanter* why he should not be attached for contempt of the order of the court in refusing to turn over the assets of the corporation to him as receiver. On the same day the judge granted an order that Tolleson show cause before him, at two o'clock in the afternoon of that day, why he should not turn over all the assets of the defendant corporation. This order was served upon Tolleson at ten o'clock on the morning of that day. When the hour for the hearing arrived, Tolleson appeared in person and answered under oath that he neither had then, nor did he have at the time said rule was served upon him, any money, property or effects belonging to the Mercantile Banking Company in his possession, custody or control. After the hearing upon the rule, the judge passed the following order:

"On hearing the above stated motion of said receiver, and on consideration of the evidence, it is ordered that J. R. Tolleson be and he is hereby committed to the common jail of Fulton county, there to remain until he complies with the order of the court heretofore made with respect to the delivery of the assets of the defendant corporation to said receiver."

On the next day (the 29th), the plaintiff filed an amendment to its original petition, setting up other facts which it is unnecessary to mention now. Another amendment to the original petition was filed, making the Prairie State National Bank a party plaintiff; and in this amendment other allegations of indebtedness were made, of which it is unnecessary to say more than that the amendment prayed that Tolleson be made a party to the petition, and he was accordingly made a party defendant. In April 1889, other creditors had themselves made parties to the original petition, and alleged indebtedness to them. Under the order of the

judge, Tolleson was committed to the common jail of Fulton county, and was still detained there when, on the 9th of November, he filed his petition to the judge of the superior court, setting out in substance the facts already detailed, and asking that he be discharged from custody, on the following grounds:

(1) "Because the receiver's prayer was that petitioner show cause why he should not be attached for contempt in not turning over the assets. The order on that prayer was, not that he should show cause why he should not be attached for contempt, but that he show cause why he should not turn over the assets; and the judgment was that he be committed to jail until he complied with the order of January 28th. He was brought into court to have it determined whether he should turn over the assets, and was sent to jail for not having done it before that time. He is now confined for failure to comply with an order that was made before there was any attempt to make him a party to the suit.

(2) "Because the proceedings under which he was committed to jail and is now confined, were brought by the receiver and not by the plaintiff.

3. "There is no averment in the original petition in the case, or in the side petition of the receiver, that this petitioner had in his custody or control any assets of the defendant corporation; nor is there any description of such assets nor what they are, nor that he has failed to turn them over and is therefore in contempt. There is no judgment of the court that there are any assets, or what they are, or that petitioner had them; nor was he ordered to produce them, nor is there a judgment that he could produce them and did not. The only orders or judgments are, (1) that the corporation turn over its assets, and (2) that your petitioner be imprisoned until he turned them over. The petitioner is now in execution without previous conviction."

This petition, by order of the judge, was served upon the original plaintiff (The People's Savings Bank), and it filed its answer resisting the application for discharge. On the hearing of the petition and answer, the judge

refused the application; and to this Tolleson excepted, and brought the case here for review.

1. The main ground urged before us by counsel for the plaintiff in error, was the 1st ground above set out. He contended, with great zeal and ability, "that an order made on the corporation and not extending to its officers or agents, could not be the foundation of proceedings for contempt against an officer who merely failed to do what was required to be done by the corporation; that before the court could punish Tolleson for contempt, he must have been made a party to the petition and service made on him as an individual; that service on him as president of the corporation was not sufficient to authorize the court to punish him as an individual, for disobeying an order to turn over the assets of the corporation." Under the facts of the case, we cannot agree with him in this view of the law. It will be remembered that the corporation was alleged to be insolvent; that Tolleson and Richards were the only members thereof; that they were insolvent; that demand was made upon Tolleson for the assets of the corporation; and that he admitted that all the assets were in his possession, and refused to turn them over, with the exception of an inconsiderable portion of little or no value. It appears from the opinion of the judge, which is in the record, that upon the trial the evidence showed that Tolleson had in his possession at that time a large sum of money which he had failed to turn over to the receiver. It also appears that when Tolleson was served with a rule *nisi* to show cause why he should not turn over the assets, he appeared in court and answered the rule under oath, not as president of the corporation but as an individual, and that he cross-examined the witnesses and took part in the proceedings before the court.

The practice in England and in some of the States of

this country is, that where a corporation is sued and an order or decree issued against it requiring it to do a specific act, and it fails to do that act, the writ of *distringas* or sequestration is issued against it, and its property seized and held until the act which it is ordered to do is performed. But it will be seen that, under the facts of this case, if these remedies had been resorted to they would have been wholly nugatory; because the corporation was insolvent, and the president thereof had in his own possession all the assets belonging to it. Besides, the procedure by *distringas* and sequestration, to enforce obedience by a corporation to process, has, so far as we know, never been used in Georgia. When a court acquires jurisdiction over a corporation as a party, it obtains jurisdiction over the official conduct of the corporate officers so far as that conduct may be involved in the remedy against the corporation which the court is called upon to enforce. So far as that remedy requires affirmative action by the corporation pending the suit, such action can be had only through the officers or agents of the corporation. Without obedience on their part to commands addressed to the corporation, there can be no obedience to such commands whatever. Any refusal by the officers to do in behalf of the corporation an act which the court has commanded the corporation to perform, and which it can perform alone through them, is an obstruction by such officers to the order of the court, and stands on the same footing as would the interference by a stranger to hinder or prevent the doing of the act by the officers, were they disposed to do it, and were they to endeavor to do it accordingly. Certainly the court could deal summarily for contempt with a stranger thus interfering, without his being made a party to the pending case. We can see no reason why an officer of the corporation who refuses to do an act on its behalf which the court has

ordered it to perform, is not as obstructive to the due administration of justice as a stranger would be who should attempt to hinder the officer from doing the act. In the one case, the officer hinders himself by his own contumacy; in the other, he would be hindered by a third person, or by the action of a will outside of his own. We think, therefore, that when it appeared that Tolleson was the president of an insolvent corporation, and the rule *nisi* was served upon him, and he came into court and answered in his individual capacity and took part in the proceedings by objecting to evidence and cross-examining witnesses, the court had such jurisdiction of him as would authorize it to deal with him as for contempt in not turning over the assets of the corporation in obedience to its order. In the case of *Ex parte* Cohen and Jones, 5 California, 494, it was held that "courts of equity have the power to appoint receivers, and to order them to take possession of the property in controversy, whether in the immediate possession of the defendant or his agents; and in proper cases they can also order the defendant's agents or employees, although not parties to the record, to deliver the specific property to the receiver. The district court caused the parties, Cohen and Jones, to be served with a rule to show cause why they should not be ordered to deliver certain property in their possession to the receiver appointed in a case to which they were not parties; and in obedience to the rule they appeared and contested the matter before the court. Held, that when they appeared and filed their answer to this rule, the court acquired full jurisdiction over the persons as well as the subject-matter." In the case of Geisee *v.* Beall, 5 Wisc. 224, the Supreme Court held that an attorney might be attached for contempt, he being in possession of certain property of his client which the client had been ordered to surrender to a receiver, although the attorney had

not been made a party to the bill. In 4 Wait's Practice it is said: "As a corporation, as such, cannot be attached for contempt, as in case of natural persons, there seems to be no remedy by which an insolvent corporation, having no property to be sequestered, can be compelled to obey a judgment commanding the performance of some specific act, as for example, to acknowledge a satisfaction of judgment, or to execute any other instrument, unless the law will regard a direction to the corporation as a direction to the officers whose duty it is to perform the ordinary business of such corporation. In such case the disobedience to the judgment could be punished as a contempt, and the officers committed until the performance of the required act." See also McKim v. Odom, 3 Bland, 407.

The second ground was not insisted upon by counsel for the plaintiff in error.

2. The 3d ground is not free from difficulty. The whole proceedings in this case seem to have been very loose and very hasty. The bill is exceedingly loose in its charges as to the nature and character of the assets which it is alleged belonged to the defendant corporation; it utterly fails to allege the nature, character, quality, quantity or amount of the assets, except the office furniture and the safe, and probably the note of Colvin. Good pleading would have required a better and more specific description of the assets which the plaintiff wished the court to seize through its receiver, or that some reason be stated why such a description could not be made. The pleader seems to have endeavored to show that there were no assets, for he alleges that the defendant advertised that it had a paid up capital of $100,000 and $5,000 surplus, and on the next page of the bill alleges that "said corporation has not $100,000 capital paid in and $5,000 surplus in cash, or other available assets," that Tolleson and Richards

were the only stockholders of the corporation, that
they were insolvent and never even gave in any prop-
erty for taxes for the years 1888 and 1889, and that the
execution dockets showed judgments against Tolleson
unpaid. The judgment of the court also was lacking
in specifying the result of the court's investigation
upon the hearing; it fails to show what assets the
court found to belong to the corporation or to be in
Tolleson's possession or under his control, or their
character, quantity or amount. We think, however,
that we can fairly infer, from some of the allegations
in the bill, that the defendant had some assets; and
giving the judgment of the court the legal presump-
tions to which it is entitled, we may infer that the
court ascertained by proper evidence that Tolleson did
have, at the time the rule was served upon him, some
assets of the corporation which he failed and refused
to surrender, and that the order committing him to jail
for refusal to obey the previous order was an implied
judgment that he was in contempt for so refusing. The
order committing him to prison, therefore, was not
void, as contended, but was only irregular. It should
have stated the character or amount of the assets
which the judge had found to be in Tolleson's posses-
sion, in order that Tolleson and the receiver might
know what Tolleson had to do to comply with the
order and be discharged from custody. As it is now,
the character and amount of the assets rest only in
the breast of the judge, and if he should die or resign
his office, his successor would not and could not know
when to discharge Tolleson for imprisonment, or when
there was a compliance by Tolleson with the order of
his predecessor in surrendering the assets. The practice
in cases where a party is ordered to turn over goods to
a receiver is usually to require him to do it upon his
own oath, or to refer it to a master to take testimony

as to the amount and character of the assets and report to the court the amount of assets found in the possession of the party; and for the court thereupon to make an order that such assets be turned over to the receiver in a certain length of time. Thus the whole matter becomes of record, and if the party refuses to obey the order and is imprisoned, he knows the character and amount of assets he has to surrender in order to be discharged. In this case it appears that the court acted as the master himself and heard the evidence on this subject, but failed to embody in his order what the proof showed the assets consisted of which Tolleson refused to surrender. We therefore direct that the judge amend the order and specify therein the amount and character of the assets which he found to be in Tolleson's possession, power or control, so that Tolleson may know what he must surrender in order to be discharged.

It may be insisted that as we entertain these views in regard to the irregularity of this order committing Tolleson to prison, it would follow that the judgment should be reversed and he be discharged from further custody. This result might have followed if Tolleson had shown any disposition to obey any part of the order. As before remarked, the judge must have found that he had some of the assets of the corporation. If Tolleson had offered to comply with the judgment of the court by surrendering something—anything substantial, and the court had refused to discharge him, his case would have been very different. But as we have seen, so far as appears from this record, he has never offered to do anything to satisfy the judge of his willingness to comply with the order in any respect. As far as the record discloses, his mouth, his hands, his pockets and his safe have been closed throughout the whole proceeding, except in the very guarded answer made to the rule.

It is insisted that before Tolleson was committed to prison, there should have been a judgment that he was in contempt of court. While this, no doubt, is the better practice in cases of contempt generally, yet in this case we think the judgment necessarily implied an order passed by the judge. Besides, this is not a case for the punishment of Tolleson, but is a remedial proceeding allowed by law for the purpose of forcing him to surrender for the benefit of creditors property to which he had no claim.

It is ordered that the judgment be affirmed, with direction that the judge amend his order by inserting therein the amount and character of the assets which at the hearing of the rule he found Tolleson had in his possession, power or control.

*Judgment affirmed, with direction.*