WEST *v.* FIELD *et al.*

Nos. 10534, 10535.   SEPTEMBER 12, 1935.
REHEARING DENIED SEPTEMBER 28, 1935.

*Madison Richardson,* for plaintiff in error.

*Mozley & Latimer, Jones, Fuller, Russell & Clapp, L. M. Talham,* and *John A. Boykin, solicitor-general,* contra.

RUSSELL, Chief Justice.   Field filed a petition in Fulton superior court against L. B. Brown, Thomas B. West, and W. J. Knox, alleging:   Petitioner owns described realty in the City of Atlanta, which was sold in May, 1932, for taxes due the city, the purchaser

being Aycock Mortgage and Bond Corporation, for the price of $62.71. At the time of the sale and for some time thereafter, the petitioner was incapacitated to look after his affairs, and his sister was appointed receiver to take charge of said property. West held himself out to the receiver and to the receiver's attorney as controlling the tax fi. fa. and deed, and agreed with the receiver that on payment of $209.85 he (West) would reconvey title to said property to Field. Under this agreement West was to send a quitclaim deed and the fi. fa. to a bank at Canton, which at the instance of Field (who had been restored to the control of his property) was ready to pay the amount agreed on. West sent the quitclaim deed to the bank, but did not send the fi. fa., and the bank returned the deed without payment of the $209.85. Thereafter counsel for Field endeavored to locate West and conclude the transaction, but West could not be found. Finally West was located; and recognizing his obligation to accept said sum, he accepted the $209.85 in cash from counsel for the plaintiff and delivered to petitioner a quitclaim deed from L. B. Brown, accompanied by quitclaim deed from West to Brown, accompanied by the tax execution involved. After said West agreed to accept $209.85 as above recited, but before the agreement was consummated, West, acting for and with the authority of Brown, undertook to sell the house on the lot described, to defendant Knox, who is engaged in the wrecking of said house and has removed the greater part thereof. Insolvency of Knox and West is alleged. Petitioner has been unable to secure any information about Brown, as West declines to inform him of Brown's location or whereabouts. The reasonable market value of the premises described, with the house thereon, was $5500, without the house $1750. Petitioner prays for injunction preventing further destruction of the house or the removal thereof by Knox, and a judgment against West, Brown, and Knox for $3750.

West and Knox were served. West filed a general demurrer to the petition. Brown was not served; the return of the sheriff showed that Brown was not to be found in Fulton County. On May 8, 1934, Field filed a petition alleging that diligent search by the sheriff and by plaintiff's counsel had failed to locate Brown; that West was the only person within the knowledge of petitioner and his counsel who knew the identity, place of residence, and

whereabouts of Brown; that in depositions duly taken in said matter West refused and now refuses to disclose the real identity and residence of Brown; that in the matters out of which the issues in said case arose West represented Brown as attorney at law; and that in refusing to give Brown's address or any information about him West was unlawfully hindering, delaying, and interfering with the proper execution of legal process and obstructing the due administration of justice. Petitioner prayed that West be called on to show cause why he should not disclose the residence of Brown, or, in default, be adjudged in contempt of court. West answered, denying that he knew the residence or whereabouts of Brown, or had ever known them, and that "within the past week defendant has made diligent efforts to locate the place of residence of L. B. Brown, but has been unable to obtain such information." The hearing on the contempt proceedings resulted in the committal of West to the common jail "until he purges himself of contempt by producing the person who signed the name 'L. B. Brown,' or disclosing his place of residence, so as to enable the sheriff to serve the said L. B. Brown." Error was assigned by West on that judgment. West also excepted to the overruling of his demurrer.

These writs of error were originally transmitted to the Court of Appeals, and by that court were transmitted to this court. The facts of the two cases as alleged in the petition, and the evidence adduced upon the hearing in the contempt proceeding, are so similar that the cases may be said to be interlocked, and obviate the necessity of making two separate decisions. We shall deal first with the ruling on the demurrer, the ground of which was that the allegations of the petition show no cause of action against this defendant. If the demurrer had been sustained, there could have been no foundation for the statements on which the petition for attachment were based, for the cause of action would have been dismissed, and there would have been no case in court, and the matters referred to in the petition for attachment for contempt could not have occurred. The plaintiff's petition named Knox, West, and Brown as defendants. At the time the demurrer was presented, only Knox and West had been served with a copy of the petition. Brown had not been served, and it appeared from the return of the sheriff that he could not be found in Fulton

County. (Naturally, the petition as a whole could not be dismissed as to Brown, because the court was without jurisdiction as to him.) The filing of a petition in the superior court is not the beginning of an action until there has been not only process, but service upon the defendant. The principle just stated is axiomatic; so the question presented by the demurrer of West is whether the allegations of the petition as a whole, including the allegations as to Brown and also as to Knox, really set forth a cause of action against T. B. West. In the circumstances alleged by the petition, the petition was not subject to the general demurrer interposed by West. The allegations of the petition might for any number of reasons be subject to special demurrer, but they were sufficient to have been cured, by amendment, as to any defects of specification. Especially is this true as to West, who alone has filed the bill of exceptions now before us. The action seeks a recovery of damages for the destruction of a house. It is not an action for trespass involving the land or lot which is alleged to be of the value of $1750. The property as improved, before the wrecking and partial removal, is alleged to have been of the value of $5500, which would leave the value of the house as of $3750; and it was for the purpose of arresting the removal of the portions of the house still remaining that temporary injunction was prayed and granted by the court. In view of the further allegations that both Knox and West are insolvent, we are of the opinion that it was essential that the court aid the plaintiff (if upon the trial it is shown that the allegations of the petition are true) in preserving any portion of the building which may or could be obtained from the remainder of the house which had not been wrecked or removed from the premises. The court did not err in overruling the demurrer; and the judgment in No. 10535 is affirmed.

Some time before the ruling upon demurrer to which we have just referred, Field, the petitioner, called the court's attention to the pleadings of file in court, and to the return of the sheriff that Brown could not be found in Fulton County; that he was a necessary party in the cause under the allegations of the petition, which by West's demurrer were admitted to be true; that, under these allegations as thus admitted, West was the only person who knew the residence or even the existence of Brown; that in dep-

ositions duly taken in said matter West refused to disclose the real identity and residence of Brown, thereby unlawfully hindering and interfering with the proper execution of legal process and obstructing the due administration of justice. Based upon these grounds, the plaintiff prayed that West be required to disclose the identity and residence of his client, Brown, or else be attached as in contempt of court. According to the laws of Georgia, all courts are clothed with inherent power to punish for contempt. Under the Code of 1933, § 24-104, "Every court has power . . to control, in furtherance of justice, the conduct of its officers and all other persons connected with a judicial proceeding before it, in every matter appertaining thereto." As to depositions taken without order or commission, it is provided that "Any witness or party refusing to produce, appear, or answer, without legal excuse, shall be guilty of contempt." § 38-2301. The provisions of § 24-105 are negative in form, declaring that the "powers of the several courts to issue attachments and inflict summary punishment for contempt of court shall extend only to cases of misbehavior of any person or persons in the presence of said courts or so near thereto as to obstruct the administration of justice, the misbehavior of any of the officers of said courts in their official transactions, and the disobedience or resistance by any officer of said courts, party, juror, witness, or other person or persons to any lawful writ, process, order, rule, decree, or command of the said courts." It is to be noted that the powers of a court are applicable to the misbehavior of any officer of said court in official transactions. The rule in the case at bar was issued against an attorney at law, who is a sworn officer of court, and the evidence on the hearing fully authorized the judge to hold that the conduct of this attorney in the transaction under review was a contempt of court, obstructing the due processes of the court and the administration of justice. The evidence of the respondent in his own behalf was contradictory and self-impeaching. The evidence as a whole fully authorized the court to reach the conclusion that West was the only person who knew or had ever known the alleged Brown; and the statement of respondent that he did not know his identity or residence, if true, authorized the conclusion that the alleged L. B. Brown was manufactured out of the whole cloth by West, to aid him in perpetrating the wrongs

under the nom de plume of a fictitious individual, which certainly would be a gross misbehavior on the part of an attorney, a sworn officer of court. If such practices, when brought to the attention of the court and proved to the court's satisfaction, are not punished, the administration of justice will become at once a travesty and a tragedy.

*Judgment affirmed in each case. All the Justices concur.*