30376. WHITE *v.* THE STATE OF GEORGIA.

DECIDED JUNE 7, 1944. REHEARING DENIED JULY 28, 1944.

*Houston White, Ezra E. Phillips,* for plaintiff in error.

*Durwood T. Pye, Joseph J. Fine, Ralph H. Pharr, John A. Boykin, solicitor-general,* contra.

BROYLES, C. J. (After stating the foregoing facts.) The petition for certiorari shows that while the court was trying the case,

the petitioner in open court used to and of the judge the following language: "I think your Honor has such antagonism toward me personally that I just can't, your Honor, seem to try a case before you without you jumping on me unnecessarily. That is not necessary, but that is the way I feel about it."

The first question presented is, was that language contemptuous? In our opinion it clearly implied that the judge was not an impartial and upright jurist, but, on the contrary, that he allowed his personal feelings of antagonism to White to influence his rulings in the case then on trial. We hold that the language was disrespectful and contemptuous, and authorized the sentence imposed by the trial judge.

The next question is, can a judgment for a direct contempt of court be reviewed by the writ of certiorari?

There are many decisions of the Supreme Court and of this court which hold that an appeal does not lie from such a judgment. However, it is not necessary for a decision of this case to answer that question. Our holding is, that the petition for certiorari in this case shows on its face that the petitioner was guilty of contempt of court; and, therefore, that it should not have been sanctioned by the judge of the superior court. We further hold that, although the judge inadvertently sanctioned the petition, he rectified that error by thereafter dismissing the petition and reaching the same result that would have followed the refusal to sanction it. It is well-settled law that a correct judgment will be affirmed, although the judge may have based it on the wrong grounds or given the wrong reasons for it.

None of the rulings excepted to were in violation of any provision of the constitution of the United States or of the constitution of this State. See, in this connection, *White* v. *George,* 195 *Ga.* 465 (24 S. E. 2d, 787), where this identical contempt of court was involved.

The foregoing rulings are controlling in the case, and the assignments of error not dealt with show no cause for a reversal of the judgment.

The dismissal of the certiorari was not error.

*Judgment affirmed. MacIntyre and Gardner, JJ., concur.*

ON MOTION FOR REHEARING.

MacIntyre, J., concurring specially. In *Cabot* v. *Yarborough,* 27 *Ga.* 476, it was said: "Questions of contempt are for the court treated with the contempt; and its decision ought to be final, except, perhaps, in the case in which the decision shows an enormous abuse of the discretion." This case has been cited with approval by the Supreme Court in *Howard* v. *Durand,* 36 *Ga.* 346, 359 (91 Am. D. 767), and by this court in *Mays* v. *Willingham,* 37 *Ga. App.* 478 (140 S. E. 789).

I think that the judge of the superior court was correct in holding, among other things, that in cases of criminal contempt in this State, in the abstract (and in a proper case), appeal or certiorari is an available remedy, and in then proceeding to hold that in this particular case the petition for certiorari should not have been sanctioned. The following appears from the stenographer's transcript from the record; "Q. [By defendant here.] 'You see here this ticket No. 303815, on this ticket where she did buy one hose?' A. 'I don't know whether she did or not.' Q. 'Is that her signature there?' Mr. Fine: 'Just a minute. I am going to make this objection to stop this line of argument, that by his own question he says: You see that she did purchase—we don't deny that she purchased these.' The court: 'I hold that it is wholly out of line. You can prove the signature, if you can.' Mr. White: 'I just asked if she knew the signature there. That was all.' The court: 'No, it wasn't all. It was nothing of the sort.' Mr. White: 'That was the last one, but the other one was not.' Q. (By the court.) 'Do you know your daughter's signature?' A. 'Well, I think I would recognize it.' The court: 'All right. Confine it to the signature.' Q. 'Look at this signature please, ma'am, here. I will ask you to look at the signature on all those tickets.' The court: 'Well, she said she signed them. You don't have to answer that.' Mr. Fine: 'We admit all the signatures.' The court: 'Of course, I don't care to be trifled with.' Mr. White: 'Your Honor, I am not trifling with the court.' The court: 'Well, yes you are.' Mr. White: 'I think your Honor has such antagonism toward me personally that I just can't, your Honor, seem to try a case before you without you jumping on me unnecessarily. That is not necessary, but that is the way I feel about it.' The court: 'I don't care how you feel.' Mr. White: 'I know you don't care how I feel,

but I want to tell you that is the way I feel. But I don't think it is called for, for you to jump at me, and holler at me like you do from the bench, and I think I have bowed to your ruling, and certainly don't have to be driven around like that, sir.' The court: 'Well, I have stopped you some, and I am doing it, trying to do it by ruling. There is no issue here before as to the items claimed, but the whole issue is as to whether either of these defendants is liable.'''

I do not think that the words used here are necessarily contumacious. In Carus Wilson's case, 115 English Reports (Full reprint), 772, Wightman, J., said: "As to contempt. Unless Mr. Wilson's conduct as described in the return could not by possibility be contemptuous, we are bound to respect the opinion of the court [who adjudged him in contempt], who are the best judges. It seems to me it might be contemplated, as being highly disrespectful, although the words themselves are not necessarily so." Patteson, J., in the same case, says that he rests his judgment "on the fact that the manner was improper, a fact of which the Royal Court [the court who adjudged him in contempt] had to judge, and of which we can not judge." Williams, J., in the same case, said: "But, when I see that a tone was used which may have amounted to contempt, the case is changed, and the argument does not apply to the only assumption on which the Royal Court seems to have proceeded, which certainly was not that of a licentia sumpta pudenter." (Brackets mine.)

In the instant case I think that the judge of the superior court was authorized to find that the judge to whom the language was addressed based his judgment of a contempt on the manner and tone as well as the affirmative act of speech of the defendant, and it seems to me that where the words spoken are adjudged by the court to whom they are addressed to be contemptuous in manner and tone, there is no practical way to accurately portray, by verbal description or otherwise, to the higher court, whether the tone and manner were contemptuous or not, and the courts for this and other reasons seem to have held that the decision of the court to which the language was addressed, and in whose face it was used, was conclusive and that it would be impractical and not conducive to the orderly conduct of trial courts to hold otherwise. To illustrate: In a baseball game when a batted ball hits a baserunner

516

he is automatically out. However, it is purely in the judgment of the umpire, who is the arbiter or judge of the game, whether or not the batted ball hit the runner, and if the umpire decided that the ball did not hit the runner, there could be no appeal from his ruling to a higher ruling body, for it would not be conducive to the best interest of baseball for a higher "court" of baseball to say, on contradictory verbal or written evidence, whether the decision of the umpire was right or wrong. Neither can a decision of the umpire as to balls and strikes be appealed, for this is a matter of judgment on the part of the umpire. On the other hand, if a batted ball hits the baserunner and the umpire admits that the ball had hit the runner but he failed to call him out, his decision could be appealed for he had violated a rule of the game, and the undisputed evidence would, as a matter of baseball law, demand a different decision.

In 1 Bailey on Habeas Corpus, p. 213, it is said: "Contempt may consist in manner and tone as well as by affirmative act of speech. A court may be insulted by the most innocent words uttered in a peculiar manner or tone. Words used may or may not be contemptuous according to the manner in which they were spoken. the court to which the language is addressed is necessarily, in such a case, the judge in this respect, and its conclusion once formed is conclusive upon every other court." Papalje on Contempt states: "One of the acts which has been held to constitute direct contempts, is protesting against a judgment of the court in an insulting manner though with language not necessarily insulting." I likewise think that the court below was correct in stating that there was one narrow, controlling issue and that is, whether *certain language used in the face of the court* was innocent or contemptuous, and this is the real issue to be decided. It seems to the writer that the court to whom the language was addressed having adjudged that it was contemptuous in tone and manner, *whether the decision was right or wrong,* under the common law, as well as under the statutes of this State, such a judgment is a conclusion which once formed by the court to whom the language was addressed and in whose face it was used is conclusive upon this court and every other court. This *being a finding on the fact that the tone and manner* was improper, *a fact which the court to whom the language was addressed had to judge,* and of

which neither the superior court nor this court can judge. Carus Wilson's case, supra. Therefore, the judgment of the superior court must of necessity be affirmed.