## 37622. GARLAND *v.* STATE OF GEORGIA.

DECIDED JUNE 23, 1959—REHEARING DENIED JULY 10, 1959.

*J. Walter LeCraw, Wm. G. McRae, Reuben A. Garland,* for plaintiff in error.

*Paul Webb, Solicitor-General, Carl B. Copeland, E. L. Tiller, Assistant Solicitors-General, William G. Grant, William F. Buchanan, Robert W. Spears, Lewis R. Slaton, J. Herbert Johnson, Thomas B. Branch, Jr.,* contra.

TOWNSEND, Judge. ■ The question has been raised, and should first be decided here, whether a direct summary criminal contempt judgment is appealable. We are dealing here with that species of contempt arising in the presence of the court which tends to scandalize it and hinder or obstruct the orderly processes of the administration of justice, the preservation of order and decorum in the court, and the respect and authority with which our courts must be clothed to achieve the high purpose upon which our civilized existence depends. We entertain no doubt whatever but that such a decision is appealable, in the sense that a writ of error may be sued out to an appropriate reviewing court to present to that court for decision the question of whether any error of law has been committed. Admittedly, there are but few cases in this State where this has been done, for an examination of cases shows that in all cases of constructive contempt it is essential, and in many appeal cases involving direct contempt it has been usual, for citation to issue and a hearing granted. But where a direct contempt is committed in the presence of the court, the offender is not entitled as a matter of right to a hearing before the court. On the other hand the court may, as here, act on its own knowledge of the facts and proceed to impose punishment for the contempt. While the court may in its discretion allow such a hearing, the refusal to do so does not deprive the defendant of the due process of law guaranteed by the State and Federal constitutions. *White* v. *George,* 195 *Ga.* 465 (24 S. E. 2d 787). The appeal by means of writ of certiorari (*White* v. *State of Ga.,* 71 *Ga. App.* 512, 31 S. E. 2d 78), while not deciding the question directly presented as to whether the judgment was appealable, held that the record showed a contempt to have been committed in fact and that the judgment of the superior court dismissing the petition for certiorari was without error. In the recent case of *City of*

*Macon* v. *Massey,* 214 *Ga.* 589 (106 S. E. 2d 23) the Supreme Court, overruling the Court of Appeals (which had held that the contempt in question was an indirect or constructive contempt) held the acts alleged to be a direct criminal contempt and directly passed upon its jurisdiction to review the ruling upon application to it by writ of certiorari. Other cases holding the decision reviewable are mentioned in the next division of this opinion.

■ "The power to punish for contempts is inherent in every court of justice. It is absolutely necessary that a court should possess this power in order that it may carry on the administration of justice and preserve order and decorum in the court. As far as we can ascertain, this power has existed since courts were first established." *Bradley* v. *State,* 111 *Ga.* 168, 170 (36 S. E. 630, 50 L. R. A. 691, 78 Am. St. Rep. 157). "The power to punish summarily for contempt is incident to courts of record, and to try a case of contempt without the intervention of a jury violates no constitutional provision. As to courts created by the Constitution, the right to define contempts can not be abridged or taken away by legislative action." *In Re Fite,* 11 *Ga. App.* 665 (2) (76 S. E. 397). "It is a settled doctrine in the jurisprudence both of England and of this country, never supposed to be in conflict with the liberty of the citizen, that for direct contempts committed in the face of the court, at least one of superior jurisdiction, the offender may, in its discretion, be instantly apprehended and immediately imprisoned, without trial or issue, and without other proof than its actual knowledge of what occurred; and that, according to an unbroken chain of authorities reaching back to the earliest times, such power, although arbitrary in its nature and liable to abuse, is absolutely essential to the protection of the courts in the discharge of their functions." *White* v. *George,* 195 *Ga.* 465, 469, supra. "It has been often decided that the action of the Superior Courts in granting or refusing injunctions will not be controlled, except when it may appear there has been a flagrant abuse of discretion. The same rule should apply to the action of the Courts relative to the punishment of parties alleged to be contumacious. Whether a contempt of Court has been committed which should

be punished, may generally be safely left to the discretion of the circuit Judges. They are not likely to fail in enforcing due respect to their orders; and their action in such cases should be final, unless there is something in the decision to show a most flagrant abuse of the discretion. *Cabot* v. *Yarborough*, 27 *Ga. R.* 476." *Howard* v. *Durand*, 36 *Ga.* 346, 359. See also *Mays* v. *Willingham*, 37 *Ga. App.* 478 (140 S. E. 789). This court, which has itself issued a citation for contempt (see *In Re Fite*, supra) recognizes the absolute necessity for courts, in as unrestricted a manner as possible, to issue such orders and inflict such punishments as may be necessary in order to preserve the order and decorum of the courtroom and enforce the rulings of the trial judge. And, while the judgment of contempt is reviewable, it will not be disturbed by this court except in the case of a flagrant abuse of discretion.

■ An exception to this judgment is that it is contrary to law. This exception is well taken if it is so vague and indefinite as to be void. It is so vague and indefinite as to be void and unenforceable if it contains no factual holdings setting out the misconduct on the part of the attorney such as will disclose to a reviewing court the subject matter upon which the discretion of the trial court operated. This court has the right and duty to review an order adjudging a defendant guilty of a direct contempt in summary proceedings as it has to review any other final judgment of the superior court on appeal, but the extent of review is limited to a review of the trial court's discretion for the purpose of ascertaining whether that discretion has been abused. We are thus faced with the ultimate question raised by the bill of exceptions as to whether the order and sentence in this case constitutes an abuse of discretion, and, before we can reach and decide that issue we are first faced with the issue of whether the judgment and sentence are sufficiently certain and definite to afford a basis for review so that the ultimate question may be reached and answered. A judgment not sufficiently definite to afford a basis for review is not sufficiently definite to serve as a basis for depriving a defendant of his liberty or property. Trial courts cannot pass orders in such manner as to preclude appellate courts from exercising their

jurisdiction when called upon to do so by a proper bill of exceptions and at the same time treat the order as valid and enforceable at the trial level, for such an order would be in violation of Art. VI, Sec. II, Par. IV (Code, Ann. § 2-3704) and Art. VI, Sec. II, Par. VIII (Code, Ann., § 2-3708) of the Constitution of Georgia placing such jurisdiction in the appellate courts. It follows that since the only error of law which may and must on proper exception be corrected by the appellate court in a judgment of the trial court regular on its face holding the defendant guilty in a summary direct criminal contempt is an abuse of discretion on the part of the trial court, this court must of necessity know the subject matter upon which that discretion operated, and, if there is nothing in the order which reveals this subject matter, then the order is not regular upon its face and is unreviewable and, by necessary consequence, completely invalid. If it cannot be reviewed at the appellate level, it is not sufficient to be enforceable at the trial level because it is not such an order and judgment as is contemplated by the Constitution and laws of this State to be entered up in a judicial proceeding.

The judgments in this case are made up entirely of conclusions. They disclose no factual misconduct on the part of the defendant such as to afford this court opportunity to review the discretion of the trial court. Accordingly, each of these orders must be treated as not being regular on its face and held to be void in accordance with the exception that is contrary to law. Where in regular lawsuits there are pleadings in civil actions and where there are accusations or indictments in criminal cases, and where in the course of the trial there is evidence which when compared with the pleadings will disclose whether or not the allegations have been established sufficient to authorize a verdict, the complaining party is not confronted with the presentation of an appeal without a record of what transpired in the trial court. Here the court, acting duly within his lawful authority, summoned the defendant before him and entered orders in writing, and they constitute the only record that can properly be before this court.

The judgment of the court as to both contempts of which he

found the defendant guilty recites no facts upon which either conviction is predicated. The language thereof is set out in full herein and reference thereto shows only the conclusions reached by the trial judge without a statement of the facts upon which those conclusions were based. For the exact facts upon which the conclusions are based he refers to the transcript of evidence in the case of State v. Bright, and with reference to the first conviction, the witnesses Rothschild, Smith, Rogers, Devore, Craig and Glover, and with reference to the second conviction, the witness Little. The testimony of the witnesses in the Bright case upon which the first conviction is based consists of 459 pages of testimony over a period of at least four days. The testimony of the witness Little in the Bright case relied upon by the trial court for facts showing a contempt as to the second conviction consists of 170 pages and apparently extended into at least two days. In *White* v. *State of Ga.*, 71 *Ga. App.* 512, supra, it appears that the judgment of the trial court did set out the exact language of which he complained. The plaintiff in error in this case complains that such procedure was not followed here; that except for certain conclusions in the order there is nowhere anything from which it can be determined on what conduct it was based, and that the conclusions stated in the order are so broad that even by examination of the record in the case of Bright v. State it is impossible to tell upon what facts the court adjudged the attorney in contempt. As to the general rule in such cases, it is stated in 154 A. L. R. (Ann.) pp. 1227, 1228: "It has been held in the overwhelming majority of jurisdictions that an order or judgment of direct contempt must contain a statement of the facts upon which the decision is based, the purpose of this requirement being to enable the appellate court to determine by an inspection of the record whether a contempt has in fact been committed and whether the court had jurisdiction to punish it. In most of the cases this result has been reached under statutes requiring the court to set forth the acts constituting the offense, but in some instances no regulating statute has been mentioned. The general rule has been followed either expressly or by necessary implication" in cases from 24 of the 49 States. Only 3 States appear

to have rejected it. While we might say on good authority that the preponderance of authority is not necessarily with the greatest number, we are yet influenced not only by the quantity but the quality of decisions under the majority rule. One State with and one State without statutory authority will serve as examples. In California it is provided (Code § 1211, Civ. Proc.,) : "When a contempt is committed in the immediate view and presence of the court, or of the judge at chambers, it may be punished summarily; for which an order must be made, reciting the facts as occurring in such immediate view and presence, adjudging that the person proceeded against is thereby guilty of a contempt and that he be punished as therein prescribed." The language of the section: "reciting the facts as occurring in such immediate view and presence" might well have been construed to mean that the order should state that the contempt was in the presence of the court. But in a long line of cases, culminating in Blake v. Municipal Court, 144 Cal. App. 2d 131 (300 P. 2d 755), it is held: "The order adjudicating a direct contempt is valid only if the recital of facts therein shows acts which constitute a contempt. If the facts so recited do not constitute a contempt the order is not enforceable." In O'Laughlin v. Superior Court, 155 Cal. App. 2d 415 (318 P. 2d 39) it was stated: "While in the contempt order the court found that the question was asked with intent to mislead and prejudice the jury against the case of the People, there are no findings of fact stated in the order sufficient to show that the question was asked with the intent stated by the court. The record also shows that the court criticized the petitioner for the manner in which he conducted the trial and that the court was influenced thereby to find him guilty of contempt therefor. However, the order adjudging petitioner guilty of contempt must recite facts which actually constituted contempt (Wilde v. Superior Court, . . . [53 Cal. App. 2d 168, 127 P. 2d 560]) and we are not here concerned with matters which do not appear therein. There are no presumptions in favor of the order and the conclusions of the trial judge cannot cure the failure to recite in detail sufficient facts in the order to constitute contempt of court." See also Gallagher v. Municipal Court, 31 Cal. 2d 784 (192 P. 2d 905).

Illinois, on the other hand, has no statute dealing with such contempts, providing only (37 Ann. Stat., § 72.25): "The several Circuit Courts in this State and the Superior Court of Cook County may make and award such judgments, decrees, orders and injunctions, and shall issue all such writs and processes as may be necessary or proper to carry into effect the powers granted to them." Circuit courts have an inherent power to punish for contempt of court. People *v.* Whitlow, 357 Ill. 34 (191 N. E. 222). Direct criminal contempts may be punished summarily by the court without pleadings or notice. People *v.* Sherwin, 353 Ill. 525 (187 N. E. 441). But it was early held in Rawson *v.* Rawson, 35 Ill. App. 505 that where the only record in fact made, or which the law required to be made, was the order of commitment, the reasonable and just rule is that the order of commitment should state the facts constituting the contempt, a failure to do which would require reversal, since to hold otherwise would "give a review of the form of the order merely, and to deprive a defendant of all opportunity to test, in the appellate tribunal, the question as to whether the act or acts of which he was guilty constituted a contempt at all. In other words, a direct review on writ of error would avail no more than a collateral examination of the order of commitment on habeas corpus, for in that proceeding the mere question of whether there is, in fact, an order of commitment by a court having power to punish for contempt may be determined." This distinction was actually made in *White* v. *George,* 195 *Ga.* 465, 468, supra, where, on a habeas corpus proceeding, the Supreme Court commenced its opinion with the careful words: "This court is not here concerned with whether on not *the facts stated* in the contempt order were sufficient to authorize the court to adjudge the prisoner to be in contempt of court." (Emphasis added.) There our Supreme Court assumed, if it did not decide, that the propriety of the order on direct appeal would be judged by the facts stated therein, and removed this question from the habeas corpus proceeding.

The Rawson case continues: "Where, therefore, the only record that is in fact made, or that the law requires to be made, is the order of commitment, and where judgments in contempt

are subject to review on error, we hold the reasonable and just rule to be that the order of commitment should state the facts or conduct constituting the contempt, and that where no statement as to the nature of the acts or words of the defendant is made in the order, the same should be reversed. In other words, where a direct review of such a summary judgment is given by law, it is the duty of the court that makes the order, said order constituting the entire record, to set out fully in the commitment in what the contempt consisted, in order that the appellate court can see from the order whether the judgment is warranted." In People v. Salbar, 282 Ill. App. 506, where the order of commitment stated that the defendant had been guilty of loud and boisterous conduct, the court said it could not tell from the order what conduct was referred to, since only conclusions were set out, and added: "We fully realize that it is necessary for courts to have and exercise the power to maintain and defend themselves against any untoward interference which tends to impede, obstruct, or bring into contempt the administration of justice. At the same time it is necessary for a reviewing court to see, from an inspection of the record, that a citizen is not deprived of his liberty excepting under the forms prescribed by law." See also People v. Coleman, 324 Ill. App. 231 (57 N. E. 2d 757); People v. Furman, 269 Ill. App. 381; State of Ill. v. Berezniak, 183 Ill. App. 350; People v. Loughran, 2 Ill. 2d 258, 118 N. E. 2d 310. In Mississippi it is held that the order must set out the substantial acts of contempt so explicitly as to warrant an appellate court in affirming or reversing. See Brannon v. State, 202 Miss. 571 (29 So. 2d 916). In North Carolina it is held essential that the facts "especially the facts concerning the purpose and object of the contemnor" be found and filed in the proceedings and the judgment be based thereon. Ponder v. Davis, 233 N. C. 699 (65 S. E. 2d 356). In Nebraska it is held "absolutely necessary for the liberties of the citizen that in recording the conviction the court shall state the facts showing the contempt charged. It is not sufficient to state in a general way the conclusions of fact on which the conviction is based." Crites v. State, 74 Neb. 687 (105 N. W. 469). In Montana the statement of the conclusions of the court in the

order of commitment as to the conduct punished, without stating the facts on which the conclusions are based, is insufficient. State v. District Court, 58 Mont. 276 (191 P. 772). In Oklahoma facts must be set forth in the order from which a clear deduction of guilt can be established. Cress v. State, 14 Okla. Cr. 521 (173 P. 854). Statement of the trial court's conclusions, without stating the facts on which they are based, works reversal in Iowa. State v. District Court, 124 Iowa 187 (99 N. W. 712). The same rule applies in Indiana (State v. Murray, 231 Ind. 223, 108 N. E. 2d 251). The list could be extended indefinitely. With or without the authority of the above cited law from other jurisdictions, there can be no doubt but that all of the following statements in the first conviction are statements of conclusion only: "wilfully made numerous inflammatory and and prejudicial remarks . . . wilfully suggested answers and information to witnesses . . . was intended to be contemptuous of the court . . . said conduct did interfere with the lawful administration of justice." The same is true of the statements in the second conviction as follows: "did . . . make numerous contemptuous remarks and arguments to the court . . . did while this witness was testifying, refuse again and again to yield to and to obey the instructions of the court . . . that said conduct was contemptuous of the court." What were the statements? What were the remarks? What information was suggested? From what does it appear that the conduct was wilful? Or contemptuous? Or that it interfered with the administration of justice? The order taken alone obviously can form no basis whatever for judicial review. A right to review an adjudication for contempt based on such an order amounts to nothing, for there is no subject matter on which it can operate. The State, however, contends that the order must be taken in reference to the record to which it refers, which, it must be remembered, is not the record of State v. Garland (there being none) but the record of State v. Bright. The plaintiff in error, after the refusal of the trial court to certify the bill of exceptions without it, brought up the testimony of the seven witnesses in State v. Bright which is mentioned in the contempt order. Since seven witnesses are mentioned it may

be assumed that in the record of the testimony of each of those seven witnesses there is matter which might, at least once, come under the heading of inflammatory statements, prejudicial statements, contemptuous remarks, prejudicial remarks, suggestion of an answer, or some one or more of them. Did the attorney suggest answers and information to the witness, Mrs. Rothschild, and did this influence the trial judge to hold him in contempt of court? The order would seem to so indicate. Mrs. Rothschild, however, (and in fact 5 of the 7 witnesses involved) were on cross-examination, and merely asking her questions which suggested the desired response would ordinarily be a proper proceeding. The problem is not whether this court can find *something* within the 629 pages embodying the testimony of these seven witnesses which would justify the trial court in holding the attorney in contempt, or even whether it could find many things, but the problem is in determining which thing or things thus found by this court was it that influenced the discretion of the trial court in committing the attorney. It cannot be stated too strongly that the brief of evidence in the case of Bright v. State has no business in this record. That evidence has to do with the dynamiting of a place of worship. It is replete with objections, colloquies of the court and counsel, and all the accumulated verbiage of a lengthy trial. For the court to say that his reasons for sentencing the defendant are lodged in this massive exhibit without pointing out wherein is the subject matter he refers to is itself a conclusion.

But the trial court, 28 days after the sentence was imposed wrote into the bill of exceptions the following statement: "I further certify that the typewritten recitals contained in Exhibits A, B and C of the bill of exceptions do not show and cannot show: (a) The contemptuous and sarcastic manner in which the numerous remarks and arguments referred to in said contempt order were made by the said Reuben A. Garland. (b) The mocking and derisive tones in which the numerous remarks, arguments, and pretended apologies referred to in said contempt order were made to the court by the said Reuben A. Garland. (c) The taunting, arrogant and impudent gestures and actions of the said Reuben A. Garland that accompanied the remarks

and arguments referred to in said contempt order and I further certify that all of these matters and things were an integral and inseparable part of said Garland's conduct while he was making many of the numerous contemptuous and prejudicial remarks and arguments. referred to in both Paragraph 1 and Paragraph 2 of said contempt order, and, of necessity, were considered by this court and influenced the court in adjudging said attorney in contempt of court as provided in the order appearing in the bill of exceptions." Thus, the judgment of the trial court confines its basis to certain testimony in the record, while the trial court in the bill of exceptions recites the above reasons in addition to those stated in the order for holding the defendant in contempt. The matter thus stated in the bill of exceptions 28 days after the entry of the order could certainly have been put in the order at the time of its entry. The subject matter over which the court exercised his discretion must appear from the judgment of conviction, but the trial court here affirmatively states that the order, even with the inclusion of the entire 629 pages of record to which it refers, does not include the entire subject matter over which his discretion was exercised. Thus the order, the only record before this court on which an appeal can be predicated, does not show (as did the order in the *White* case) the facts upon which it is based, and those facts cannot be shown otherwise, but rest within the mind of the court alone. *Tolleson* v. *People's Savings Bank, 85 Ga.* 171 (11 S. E. 599) cited by counsel for the State, is not authority for the proposition that a defendant may be attached for contempt without there being a record to show the facts upon which the attachment was based. In that case there was a petition citing the defendant for contempt because of his refusal to deliver over certain assets in his possession to a receiver appointed by the court. The court heard evidence on this question and "it appears from the opinion of the judge, which is in the record, that upon the trial the evidence showed that Tolleson had in his possession at that time a large sum of money which he had failed to turn over to the receiver." P. 177. The defendant Tolleson upon being committed to jail elected not to appeal this decision, but, after having remained there for some time,

brought a petition in which he attacked the proceedings for specified reasons. Apparently no brief of evidence of the hearing on citation was preserved or was before the reviewing court. The court criticized the order for lack of definiteness in failing to specify the exact acts for which the defendant was held in contempt or the exact manner in which he might purge himself thereof, yet it considered the citation in which the facts were set out, the fact that the court had indeed heard evidence and based a decision thereon, and the fact that the defendant had in fact participated in the trial and cross-examined witnesses; it then held that under these circumstances the presumption that the order had been entered up on sufficient evidence would be indulged. It is noted that this case was on a separate petition to the court and was not on appeal.

As the case stands here, this court is unable to find a basis for review of the order of the trial judge in the record before it. There was no citation, the court heard no evidence (as indeed it need not have done) and the order entered, the only basis for judicial review, is void for insufficiency. It is accordingly impossible for this court to pass upon the merits of the case on the record before it.

We are in somewhat the same situation as was the Supreme Court, in *Cross* v. *Huff*, 208 *Ga.* 392, 397 (67 S. E. 2d 124), where called upon to review an order of revocation of probation where no terms of probation had been fixed by the court in the first instance. In holding the order of revocation void under these conditions, the court said: "The citation of the solicitor of the city court recites only that 'the said defendant violated the terms of said probation sentence by then and there failing to comply with same.' How, when, where, or in what manner it is claimed that the defendant could have failed to comply with non-existing conditions does not appear from the record in this case. Had the alleged probation sentence contained even the admonition to 'go and sin no more' (John 8:11), the sentence might be subject to construction. But courts can not construe that which does not exist."

The order of the trial court here adjudging the defendant in contempt fails to comply with the minimum requirements as

to certainty and is therefore too vague and indefinite to be enforceable.

*Judgment reversed. Felton, C. J., Carlisle, Quillian and Nichols, JJ., concur. Gardner, P. J., dissents.*

GARDNER, Presiding Judge, dissenting. The power to punish for contempt is of very ancient origin. The courts have long exercised this power even as early as the annals of the courts. A trial judge's opinion of any conduct and language addressed to the judge presiding in the case is final unless abused. It is within the power of the trial judge to determine whether the language used and the attorney's conduct constitute a contempt of the court and an impediment of the administration of the law in the particular case before him. In this the trial court has a broad discretion and his order cannot be reversed unless that discretion is abused. This long has been the law.

The facts constituting contempt cover a wide range. The most familiar forms of contempt are found in cases involving conduct which hinders, delays and obstructs the administration of justice. These are usually committed in the progress of some cause. Acts which bring the court into disrepute or disrespect or which offend its dignity or affront its majesty or challenge its authority constitute contempt. An attorney is an officer of the court and whatever he does which impedes or obstructs the administration of justice by using contemptuous words and acts is contemptuous and may be properly punished.

It is peculiarly the duty of any attorney (an officer of the court) to maintain the respect due courts, and any breach of this duty is a contempt. An attorney may be guilty of contempt of court by misconduct during a trial which tends to embarrass the administration of justice as by disobeying a proper and lawful order of the court or of addressing to the judge language improper in manner or tone. See *West* v. *Field*, 181 *Ga.* 152 (181 S. E. 661, 101 A. L. R. 465 et seq.).

In Fisher *v.* Pace, 336 U. S. 155, 161 (69 S. Ct. 425, 93 L. Ed. 569) that court said: "In a case of this type the transcript of the record cannot convey to us the complete picture of the courtroom scene. It does not depict such elements of misbehavior as expression, manner of speaking, bearing, and attitude of the peti-

tioner. Reliance must be placed upon the fairness and objectivity of the presiding judge. The occurrence must be viewed as a unit in order to appraise properly the misconduct, and the relationship of the petitioner as an officer of the court must not be lost sight of." In Ex parte Terry, 128 U. S. 289, 313, (9 S. Ct. 77, 32 L. Ed. 405), the U. S. Supreme Court said: "We have seen that it is a settled doctrine in the jurisprudence both of England and of this country, never supposed to be in conflict with the liberty of the citizen, that for direct contempts committed in the face of the court, at least one of superior jurisdiction, the offender may, in its discretion, be instantly apprehended and immediately imprisoned, without trial or issue, and without other proof than its actual knowledge of what occurred; and that, according to an unbroken chain of authorities, reaching back to the earliest times, such power, although arbitrary in its nature and liable to abuse, is absolutely essential to the protection of the courts in the discharge of their functions. Without it, judicial tribunals would be at the mercy of the disorderly and violent, who respect neither the laws enacted for the vindication of public and private rights, nor the officers charged with the duty of administering them."

A direct contempt consists of words or acts committed in the presence of the court or spoken so near to or during its intermissions which tend to embarrass, prevent or obstruct justice. In Cabot v. Yarborough, 27 Ga. 476 (which case concerned a civil contempt, and not criminal direct contempt as is involved in the present case), the Supreme Court said: "Questions of contempt are for the court treated with the contempt; and its decision ought to be final, except, perhaps, in the case in which the decision shows an enormous abuse of the discretion."

In the celebrated case of In re Fite, 11 Ga. App. 665 (2) (76 S. E. 397), the Court of Appeals held: "The power to punish summarily for contempt is incident to courts of record, and to try a case of contempt without the intervention of a jury violates no constitutional provisions. As to courts created by the Constitution, the right to define contempts cannot be abridged or taken away by legislative action."

In the early case of Bradley v. State, 111 Ga. 168, 170 (36

S. E. 630) the Supreme Court said: "The power to punish for contempts is inherent in every court of justice. It is absolutely necessary that a court should possess this power in order that it may carry on the administration of justice and preserve order and decorum in the court. As far as we can ascertain, this power has existed since courts were first established. Judge Wilmot, in 1795, in a treatise upon the subject, said he had been unable to find where it was first exercised, but in his opinion it was as old as the courts themselves. All the courts, their decisions, and all the text writers lay down the same doctrine, —that this power is necessary to all courts and is inherent in them. It is so well established that we deem it unnecessary to cite authorities upon the subject. This power being inherent and necessary, can the legislature by defining what are contempts limit the courts to treating as contempts such acts only as are embraced in the legislative definition? In the formation of our government, Federal and State, the three departments of government were in each constitution ordained to be separate, distinct and independent of each other. No one of them had any right or power to infringe upon the power or jurisdiction of the other, without an express constitutional provision granting this right or power. The legislature cannot take away, restrict, or modify any of the powers conferred by the Constitution upon the executive. Nor can the executive infringe upon the powers of the legislature. Nor can either the legislative or executive abridge the powers conferred by the Constitution upon the courts, unless express authority is given. Each of these departments represents the sovereignty of the people. Indeed, the executive, the legislature and the judiciary are but the servants and agents of the people. To each department the people have given certain powers, and have declared that neither of the other departments shall interfere therewith. The people have intrusted these servants or agents with the duty of carrying out their will, and for that purpose, in one of these departments, they have by their organic law established certain courts. Among these are the superior courts. When these courts were established by the Constitution, they were established with all the rights and powers possessed by all courts of record prior

to that time. Among these powers was that of *defining* [italics ours] and punishing contempts of court, whether such contempts were direct, that is, committed in the presence of the court, or constructive, interfering indirectly with the administration of justice. This power was incident to the court itself and belonged, not to the judges as individuals but to the court. The courts established by the Constitution were established by the people and represented the majesty of the people. Whoever disobeyed an order of such a court, or was in contempt of its proceedings, or did anything which tended to impede or corrupt the administration of justice committed a contempt against the majesty of the people. Without power and ability to preserve order and decorum, to preserve the purity of jury trial and to enforce their own orders, and the like, courts could not carry out the wishes of the people. The courts established by the Constitution were therefore vested with all these necessary powers,— powers which were at common law possessed by all courts of record. Whatever a court of record could, under the common law, punish as a contempt, these courts had power to deal with as a contempt. This power came to them as much as did the common law. Indeed it is a part of the common law. 1 Bailey on Jur. § 297. When the constitutional convention established our courts, it vested in them all the power necessary to carry out the purposes for which they were designed. Such a court, established with such powers, is not in the exercise of these powers subject to legislative control. The superior court is a constitutional court, established with these powers, and the legislature has no right, without express constitutional authority, to abridge, restrict, or modify either its jurisdiction or its powers, [citations] . . . Paragraph 20 of section 1 of article 1 of the Constitution of our State (Civil Code, § 5717) [§ 2-120, Code of 1933] in the bill of rights, says: 'The power of the courts to punish for contempts shall be limited by legislative acts.' We think that neither a literal nor a liberal construction of this paragraph can make it mean what counsel for the plaintiffs in error insisted it did mean. The word 'power', used in this connection and as applied to courts, means 'the right, ability, or faculty of doing something' (Bouvier's Law Dict., 2d

ed., title 'power') ; it is 'the ability to act, regarded as latent or inherent; the faculty of doing or performing something; capacity for action or performance' (Webster). The word 'punish' is defined by Webster to mean 'to impose a penalty upon; to afflict with pain, loss or suffering for a crime or fault; . . . to inflict a penalty for [an offense] upon the offender;' and by Anderson, 'to impose a penalty for the commission of a crime'. Giving to these two words their ordinary and usual meaning, the paragraph would read as follows: The right or authority of the courts to impose penalties or inflict punishment for contempts shall be restricted by legislative acts. If the framers of the Constitution had desired that the legislature should classify and define contempts of court, they would certainly have put in this paragraph or in some other words expressly giving the legislature the power to do so. Had they said that the legislature should have power to define what are contempts there could be no possible doubt upon the subject . . . Such a court may still 'go beyond the provisions of the statute in order to preserve and enforce its constitutional powers by treating as contempts acts which clearly invade them'. Rapalje, Contempts, § 11."

The language used by the attorney in the case of *White* v. *State of Ga.*, 71 *Ga. App.* 512 et seq. (31 S. E. 2d 78) was: "I think your Honor has such antagonism toward me personally that I just can't, your Honor, seem to try a case before you without you jumping on me unnecessarily. That is not necessary, but that is the way I feel about it". The late Chief Judge of this court, Judge Broyles, wrote the opinion and deemed such language to be contemptuous of the trial judge in that case.

Since the Bright trial in the Superior Court of Fulton County lasted nearly two weeks, no doubt it is true that the judge, the jurors and counsel probably were exhausted, but the decorum accorded justice by the proper administration of our laws should never waver, never wane and become lax, and the firm but just administration of our laws must ever be without the slightest laxity, and must be administered with a just, yet often a stern hand. Never must we forget that the rights and liberty

of our people, and oftentimes their lives, are involved in the proper administration of justice. Our judges, our counsel and our jurists, who are all officers of the court, must always be alert to see that all is done within their power to the end that the innocent do not suffer or the guilty go unpunished. Thus we have the inherent power in every constitutional trial court to preserve the dignity and decorum required and necessary to uphold all officers of the court in a fair, impartial and solemn administration of justice to the poor and the affluent alike within the precepts of our law, insuring to all a fair deal. Therefore our forefathers, in the framing of the national as well as Georgia's Constitution, empowered trial courts with the power to preserve judicial decorum, including punishment for contempt of the court. A trial judge has the power to define what language is contemptuous to the court. These courts are vested with a wide and broad discretion in such matters. See *Bradley* v. *State*, 111 *Ga.* 168, supra, and *In re Fite*, 11 *Ga. App.* 665, supra, as well as many other decisions. Such appellate court rulings and opinions are all to this same effect, that is, that it is within the discretion of the trial courts to determine what is contempt. The presiding judge himself, namely, the judge before whom such language, acts, mannerisms, etc. occur, must decide what language or acts, if any, were subject matter of punishment for contempt. Where it is not a clear case of abuse of the discretion of such trial court or presiding judge, the appellate courts are bound by the determination of the trial court or judge thereof as to whether or not the language addressed to the judge or the manner displayed or the acts employed by the attorney (or other person) before or in the presence of the court, constituted a direct or criminal contempt. In the case sub judice, the language, the acts of, and the manner used by counsel, Reuben A. Garland, to his Honor, Jeptha C. Tanksley, the judge presiding in Fulton Superior Court, a constitutional trial court under the law and Constitution of Georgia were determined and adjudged by the judge presiding to be a contempt on the part of attorney Garland. This determination of the trial judge is final, in the absence of flagrant abuse of discretion, and no such abuse appears. See *Bradley* v. *State,*

848

supra, *In re Fite*, supra, and others to this same effect, i. e., that it is within the discretion of the trial courts to determine whether or not a contempt has been committed.

We have here the record containing the language addressed by attorney Garland to Judge Tanksley, and subject matter relating to the attorney's demeanor, manner and conduct. His Honor, Judge Tanksley, did rightfully, and consistent with the law and justice, determine attorney Garland to be in contempt of the court. No jury question is involved. It is my opinion that Judge Jeptha C. Tanksley properly held attorney Reuben A. Garland to be in contempt of court by the language addressed to the court and the tone and manner thereof, as well as by the acts and conduct of the said attorney in the court's presence, and being one of the Judges of the Superior Court of Fulton County, a constitutional court, did not abuse his discretion in the premises.