Remley v. DeWall

these other grounds were does not appear. He granted a new trial *upon the last ground stated. This grant of a new trial is assigned as error.

(When the cause was called here, no appearance was made for defendant in error, but several days afterwards, and before the case was decided, Mr. Estes appeared, and by permission of the Court filed his brief.)

Alexander S. Erwin, Hutchins & McMillan, H. P. Bell, for plaintiff in error.

J. F. Langston, J. B. Estes, for defendant.

---

JOHN W. REMLEY, plaintiff in error, v. CHARLES DeWALL, defendant in error.

(Atlanta, January Term, 1871.)

1. CONTEMPT—REPORT OF AUDITOR MADE JUDGMENT OF COURT—FAILURE TO COMPLY WITH JUDGMENT.— When a bill for account and settlement, dissolution of copartnership and appointment of Receiver and the process of injunction has been filed in Court, and, by consent of parties, the matters in controversy have been submitted to an auditor, and his report by consent has been made the judgment of the Court, and the defendant fails to comply with such judgment in the premises, and retains the assets and business of the firm:
   Held, That the award and order of the Court is not such a judgment or decree for money, as deprives the Chancellor of all further control or jurisdiction of the case and compels the complainant in the original bill to sue at law for the amount so awarded to him, but is such a settlement under the order of the Court, as retained, in the hands of the Chancellor, full and unquestioned authority, jurisdiction and power to enforce obedience to the mandates of the Court by attaching the party for contempt.

2. SAME—SERVICE OF ATTACHMENT NISI—NOT ATTACHED TO ORIGINAL BILL OR COPY SERVED—SUFFICIENCY.—When attachment nisi for contempt was served personally by a constable, and process was not attached to the original bill or copy served:
   Held, That the service was sufficient to bring the party into Court, and *is not such process as requires to be annexed to the bill or copy and served by a sheriff deputy or coroner of the county.

3. SAME—ATTACHMENT—APPEARANCE—CANNOT ENTER INTO MERITS OF CASE.*—When a party in response to an attachment for contempt appears before the Chancellor:
   Held, That he is not in a position to litigate on claims of credit or

---

*CONTEMPT—VIOLATION OF INJUNCTION — REFUSAL TO HEAR PARTY ON MOTION TO DISSOLVE INJUNCTION. —A license for the sale of liquor, issued to the defendant, was de-

Remley v. DeWall

discuss the merits of the demand. The naked question of contempt has primarily to be disposed of and the order of the Court in the premises must be obeyed.

4. SAME — IMPRISONMENT—CONSTITUTIONAL LAW†— NATURE OF ORDER OF COURT.—The order of the Court requiring the delivery of money in his hands on pain of imprisonment, was not an infringement by the constitutional inhibition against imprisonment for defendant, but is in the nature of the performance of a duty, arising under the pleading in Chancery, which holds the party amenable to the power of the Chancellor until discharged.

5. SAME—APPELLATE PRACTICE—COURT RELUCTANT TO INTERFERE.—In the exercise of the power of the Chancellor in matters of contempt, this Court will be reluctant to interfere, except there be a flagrant abuse of it. The independence and integrity of the judicial office depends on the enforcement of the processes and powers of the Courts below, and the legitimate exercise of them will be sustained by this Court.

---

clared void on the ground that the requirements of law had not been complied with in obtaining the same, and an injunction was granted restraining him from selling liquor under the void license upon the ground that such an injunction was authorized by what is known as "blind tiger" law. Subsequently a second license was issued to him in accordance with law, but he was attached for contempt on the ground that the sale of liquor under this license was a violation of the injunction. In the proceedings for contempt the lower court refused to allow the defendant to prove by evidence that the sale of liquor under the second license was not a violation of the injunction; but the supreme court said: "The injunction, however, did not have the effect to restrain Wray from proceeding to secure a license to be issued to him in accordance with the law; and when such a license was issued this authorized him to sell. Properly construed the order of the judge simply restrained Wray from selling liquor in the town of Ball Ground without a lawful license, and a sale by him after the injunction was granted under authority of a license which was legal and regular in all respects, was not a violation of the injunction. The judge, therefore, erred in striking that part of the answer of the defendant to the rule for contempt which attempted to set up that the sales which were alleged to have been in violation of the order of the court were made under authority of a lawful license which had been granted after the order was passed. Under the allegations of his answer Wray never violated the injunction. He was never in contempt. He should not have been attached for contempt; and this being true the fact that he was attached constituted no sufficient reason for refusing to hear him on the motion to dissolve the injunction. If he had really violated the injunction, then of course he should not have been heard on the motion to dissolve until he had purged himself of this contempt. See in this connection, Remley v. DeWall, 41 Ga. 466." Wray v. Harrison, 116 Ga. 100, 42 S. E. Rep. 351.

†SAME—ATTACHMENT — IMPRISONMENT.—In a creditor's suit under the insolvent trader's act, the judge of the superior court, after the appointment of a receiver, has power to order the defendant to deliver to such receiver all his assets including money; and upon failure to comply with the order after demand duly made, the defendant is subject to be attached for contempt for disobedience in not delivering up the specific sum of money found and adjudged to have been in his hands or under his control at the time demand was made upon him by the receiver. Imprisonment by virtue of such attachment is not imprisonment for debt, but for contempt of a lawful judicial order. Ryan v. Kingsbery, 88 Ga. 361, 14 S. E. Rep. 596, citing the principal case.

Contempts. Imprisonment. Before Judge Clark. Sumter County. Chambers. August, 1870.

Said Remley and DeWall were merchants and partners, under the firm name of Remley and Company. On the 7th of January, 1870, DeWall filed a bill in said Court against Remley, praying for the dissolution of said firm, for an account and settlement, for injunction, and that a Receiver be appointed to take charge of the assets of the firm. The Chancellor granted an order requiring Remley to show cause, on the third Monday of said month, why said injunction should not issue and why a Receiver should not be appointed as prayed for. Remley answered the bill. At the time appointed for hearing, upon consent of counsel for the parties, it was ordered that upon Remley's giving bond with good security, in the sum of $10,000 00 "fully to comply with the interlocutory orders of the Chancellor in this Court, as well as to answer fully the decree to be rendered in this cause," the motion for injunction and Receiver be considered as refused. Further, by consent, an auditor was then and there appointed by said order with power to hear and determine *all the matters in issue between the parties, and report the same to the Chancellor, in vacation, as early as practicable, and "for non-conformity to any interlocutory order in said case he (Remley) should be subject to an attachment as for a contempt, as well as liable on said bond."

The auditor made his report, setting forth the assets and debts, etc., etc., particularly which are not material here. He stated that the stock would pay the debts of the firm and leave a surplus of $839 50. Remley was to keep the stock and pay the debts, and get the choses in action into two equal parts, and let DeWall take one and he keep the other, and Remley was to pay in cash to DeWall half of said surplus, plus $18 18, this last being half of what the firm owed DeWall; further, that Remley should convey a certain lot to DeWall's wife (the firm having the legal title to it, whereas she was the real owner), and that Remley gave security to comply, if DeWall desired it, but the auditor thought the bond already given was sufficient; Remley was not to delay payment of the firm debts till he could make collections, and the firm was to be considered as dissolved from the 8th of January, 1870. Upon the coming in of this report, by like consent, on the 1st of February, 1870, at Chambers, the Chancellor passed an order that said firm be considered as dissolved from the 8th of January, 1870; that Remley pay DeWall $436 93, as required by the auditor's report, within three days from that date; that Remley divide the choses in action into two lists and give DeWall choice of said lists; that said report be made the judgment of said Court and be fully complied with.

Remley did not do all that was required. On the 23d of February, 1870, DeWall wrote Remley, demanding of him half of the money collected by Remley on the firm accounts

before they were divided, the whole amount collected by Remley on the list of accounts selected by DeWall, the use of the firm books till he could draw off said accounts selected by him, and stating that, if his demand was not responded to that day, he should have him attached for contempt. Remley did not respond.

Thereupon, on the next day, DeWall, at Chambers, presented to the Chancellor a petition *setting forth said decree, that, before making the division of accounts, as by the decree he was required to do, Remley collected about $400 00 on said firm accounts and did not put the accounts on which these $400 00 were collected upon either of the lists submitted for division; that the lists, (but lately furnished,) as presented, did not contain all the accounts; he got Remley to add others of which DeWall was cognizant and then took his choice as directed, though then satisfied that other accounts had been left off from said lists; on the lists of accounts given to DeWall, Remley has collected about $220 00; Remley, though often requested, will not pay him half of said $400 00, nor pay him said $220 00 collected on his accounts, nor let DeWall have the firm books long enough to draw off his accounts; that on the 23d he made said written demand on Remley, to which he made no response, and that Remley was about to leave for New York, and that it would greatly injure DeWall if he was not compelled to pay him before leaving.

He prayed for an attachment to compel Remley to comply with said decree. The Chancellor passed an order requiring Remley not to leave the county, and to show cause before him, on the next day, at 10 o'clock, A. M., at Chambers, why he should not be attached for contempt for not complying with said decree. A copy of said petition and order was at once served on Remley by a constable. He did not appear as required, and thereupon the Chancellor ordered the sheriff to arrest him and bring him before the Chancellor, to show cause, at once, why he did not comply with said decree and why he should not be punished for his contempt of the order last aforesaid, and that the books of the firm be at once turned over to DeWall. Remley's counsel asked a day to file an answer, and it was granted by the Chancellor, with the further order, that he show cause why he had not paid the claim of Sharp & Thompson against the firm, and why he did not make said deed to Mrs. Wall.

Remley's counsel then demurred to and answered said proceeding. The demurrer was upon these grounds: 1st. Said order is improvident, because said decree was a final disposition *of the cause. 2d. Service by the Constable was not sufficient in law. 3d. The process granted was not annexed by the Clerk to the original bill, nor any copy thereof to the copy bill, as required by law; and last, because DeWall had a complete remedy at law.

He answered that he made said division of accounts as soon

as practicable; that before making it he had collected on said accounts $388 00, half of which belongs to DeWall; but he denied that the decree required him to pay DeWall the same; said he was ready to do so, however, when DeWall would settle with him fairly. He admitted that he had collected out of De-Wall's part of said accounts $212 50, (stating how he did so, to show that there was no dishonesty in doing it,) and that he was justly to account to DeWall therefor. He then set out that he had paid out for the firm $62 69, which were reckoned in the schedule of accounts, because these claims were not on the books of the firm, and he claimed DeWall should pay one-half of that, say $31 34½. Further, he said, DeWall had collected $6 50 which belonged to Remley. Further, he said, one Black owed them jointly $37 20, and he wished to give DeWall an order on Black for that and claimed a credit for $18 60 against DeWall. Therefore, he admitted that he owed DeWall $350 06, and said that he was always ready to settle on that basis. He said some accounts had been inadvertently left off the lists, but this he was willing to have rectified by DeWall, who had obtained the books of the firm. He filed with his answer a deed to Mrs. Wall, as required, and made an explanation as to why he did not pay the demand of Sharp & Thompson. He denied any intended contempt; said, being busy, etc., trying to get off to New York, he did not read the paper served on him by the constable, did not have time to consult his counsel, but supposed his counsel would attend to it for him. He insisted that attachment was an unnecessary and an illegal remedy under the facts. He prayed a return of the books to him, that he might close up the firm business. The hearing did not come off till August, 1870.

The Chancellor overruled the demurrer and heard the parties *on the pleadings aforesaid, etc. At the hearing DeWall admitted that he had collected said $6 50, and that it was a proper charge against him by Remley. Remley's counsel stated that DeWall had admitted that the statements in the answer as to said $62 68, were correct, and neither DeWall nor his counsel denied that DeWall had so said. DeWall's counsel also expressed DeWall's readiness to admit said credit of $18 60, by reason of the claim on Black. Remley's counsel said they were ready to give the order on Black for the $37 20 aforesaid, and it was admitted that Remley had paid DeWall the $419 75, due him as half of the surplus of stock over the debts.

After argument the Court adjudged that Remley was in contempt, of which he might purge himself by paying to DeWall, within three days, $424 50; if he did not pay it within three days, he should be put in jail and there kept till he paid said $424 50, with interest for the past six months.

Remley's counsel now say that the Chancellor erred in overruling the demurrer on the several grounds stated therein; in granting an order for payment of $420 50,

Remley v. DeWall

thereby including said $18 18, which the firm owed DeWall on account, and not allowing said $6 50 collected by DeWall, or the $31 34, DeWall's half of the debts paid by Remley, or the $18 50 in Black's hands; in not ordering the books returned to Remley, etc.

The Court certifies, that no point was made before him as to said credits; that there was some talk about them, but it was understood that they did not desire him to go behind the decree. As to the delivery of the books, etc., he certified he was ready to comply with Remley's wish, when Remley complied with the order of the Court.

(When the cause was called here, counsel for defendant in error moved to dismiss the writ of error, because it was premature, as this was but an interlocutory order. The Judge's certificate was dated in August, 1870. The Court ordered argument to proceed, reserving that question for decision, if the Court thought it was well raised. In the argument, *counsel for defendant asked for damages for a frivolous writ of error.)

N. A. Smith, A. R. Brown, for plaintiff in error.

S. H. Hawkins, DuPont Guerry, Hawkins & Burke, for defendant, said attachment was the right remedy: Code, secs. 3044, 4145-7; 34th Ga. R., 162; 36th, 364; Eq. Dig., vol. 3, pg. 360. Service by bailiff was good: Dan. Ch. Pl. and Pr., 1794, 1796. If not, subsequent proceedings and appearance cured that: the only question before the Court was the contempt: Dan. Ch. Pl. and Pr., 554, 556; 1st page Ch. R., 626, note 2; 8th Porter, 277; 2d Paige R., 326. And all was in Judges discretion: 27th Ga. R., 476.

LOCHRANE, C. J.

In January, 1870, Mr. DeWall filed his bill against Remley, for dissolution of partnership account, settlement, appointment of Receiver and injunction. The Judge granted a rule, calling on Remley to show cause why the injunction should not be granted, and the Receiver appointed, and, until the hearing, restrained the defendant, under the prayer of the bill, from selling, or otherwise disposing of the stock in trade, or assets, books, or other articles belonging to the copartnership.

At the hearing, the Judge, by agreement of counsel of both the complainant and defendant, passed the following order: "Upon the defendant giving good security, in the sum of $10,000 00, to fully comply with the interlocutory orders of the Chancellor in this Court, as well as to answer fully the decree to be rendered in this case, it is ordered, that the injunction be denied and a motion to appoint a Receiver be refused. And, by consent of counsel in open Court, it is ordered that Samuel C. Elam, an attorney of this Court, be and he is hereby appointed Auditor, with full power to hear and determine, (and to be aided by a Clerk,) all the matters

in issue between the parties, and report the same to me, as Chancellor in vacation, at the earliest practicable day, and *that the time and place of the sitting of said Auditor shall be made known to the parties, or their counsel, and for nonconformity to any interlocutory order in said case, he shall be subject to attachment for a contempt, as well as liable on said bond."

Under the powers and direction of this consent order, the Auditor proceeded to hear the matters in issue, and made his report on the 27th January, 1870, and, by consent of parties, on the 16th of February, 1870, the report of the Auditor was made the judgment of the Court. Under this report the firm was dissolved, the stock in trade left in the hands of Remley and the indebtedness was to be paid by him. The half of the surplus stock, $419 75, was to be paid over to DeWall, and the accounts due the firm were to be equally divided between the parties.

It appears by the petition of DeWall, which is without date, that Remley did not, in the spirit of the order, carry out the direction of the Court, and he set forth by complaint to the Judge below, that Remley had collected upon the books of the partnership some $400 00 before the division of the accounts. He complained that the list offered for division by Remley were incomplete, but after some delay the division was made. And DeWall, by his petition, set forth that, of the accounts turned over to him, Remley had collected the sum of $220 00; that he had tried every way to get Remley to pay him the amount thus collected before the division, and also to let him have the books of Remley & Company to draw off and prepare for collection such accounts as he had; that Remley had refused, and that he had given him, by written demand, notice that if he did not comply he would apply for an order attaching him for contempt. He also, by the petition, alleged that Remley was about to leave the State without compliance in the premises, and closed his petition with an application for an order nisi against Remley, requiring him to show cause why he should not be attached for contempt.

The Judge, on February 4th, 1870, passed an order requiring Remley to show cause why he should not be punished *for contempt of the order of the Court in the several matters complained of in this petition, and, until cause was shown, ordered that Remley should not leave the jurisdiction of the Court.

On the 3d of March following, Remley having failed to appear, the Judge ordered that the sheriff arrest Remley and bring him before the Court, and that he show cause at once, why he had not fully discharged the decree in the case, and why he should not be adjudged in contempt for his failure therein, and for failure to respond to the order served on him on the 23d February. The record discloses that no further action was had in the matter until the 22d of April

Remley v. DeWall

following, when time was allowed until the following morning for Remley to make his answer to the orders referred to.

In response, on the 23d of April, Remley, by his counsel, demurred to the proceedings had, upon the grounds: 1st. That the rule nisi was improvidently granted in this—that there was a full and final decree by the judgment of 1st February, 1870. 2d. Because the process was not annexed to the original bill, etc. 3d. Because it was not served by the sheriff. 4th. Because the remedy at law was adequate.

He also answered and admitted that he had collected the amounts, less some small credits claimed. He alleged his readiness to pay the amount he set up as due, and to make full settlement on the basis of calculation he set out in his answer. He denied all intention of treating the orders of the Court with contempt. He concluded with the assertion that he cannot be attached for contempt, and that DeWall's remedy was to proceed by suit to enforce his demand.

Upon the hearing the Judge overruled the demurrer, and passed an order (after reciting the history of the case) adjudging Remley to be in contempt, allowing him three days to purge the contempt by paying the sum of $424 50 to complainant. Upon failure, the Clerk of the Court was directed to issue the attachment against him for contempt in the premises, directing all lawful officers to seize his body and confine him in jail, without bail or main prize, until he *paid over the money. This final order bears date August 12th, 1870.

Upon this plaintiff in error assigns error: 1st. Upon overruling the demurrer. 2d. Upon ordering the whole amount paid, and disallowing the offsets claimed, and other grounds not necessary to recite. The Judge, in his notes to the decision complained of, states the matters of credit were not pressed in the argument below.

1. The question before us is, whether the Judge was right or wrong in passing the order of August 12, 1870, and the solution of this question depends upon certain principles of equity, jurisdiction lodged in the Judges of the Superior Courts of this State, and the powers which the Chancellor may exercise in the enforcement of his orders against parties over whom the jurisdiction is exercised. It appears from this record, that the parties were copartners, that a bill for account and settlement and dissolution had been filed in the Court, that by consent the matters in issue were submitted to an Auditor, that his report was made, by consent, the judgment of the Court, and the plaintiff in error, under the judgment, retained the assets and business of the firm. It also appears that he did not comply with the judgment upon his part, but failed, and refused to carry out the obligations imposed upon him by the order of the Court in the premises.

This order, dated 1st February, 1870, we find still open and unperformed. Was the judgment a decree for money which, from the moment it was passed, deprived the Chancellor of all further control and jurisdiction, and left complainant in the original bill without remedy except by the tedious processes of an ordinary suit at law for the amount awarded him by the Auditor; or was it a settlement under the order of the Court over which he not only had the right, but it was his duty to enforce it by the powers incident to his office, and invoked by the disobedience and disregard with which it was treated? We hold that the order of the Court making the report of the Auditor its judgment, was such a proceeding in equity as retained in the hands of the Chancellor full and unquestioned authority, jurisdiction and *power to enforce its terms, and compel obedience to its mandates by the parties. The money held by Remley is not a debt in the ordinary sense of the term; it is the property of DeWall, and he must deliver it under the order of the Court. He cannot take the benefits of the order and refuse to discharge the counter duty it imposes. When a party refuses full and prompt compliance in good faith, with the orders of the Chancellor, his power by attachment may be exercised to compel obedience and compliance.

2. And in this case we hold that the rule nisi for contempt, etc., was properly issued. As to its service by a constable in the first instance, we do not think that such a proceeding is within the provision of the Code, section 4128, and could only be served by the sheriff or his deputy, or a coroner. This section applies to original proceedings by bill, and not to the service of rules or orders nisi; for in such cases the Judge may direct them service. Besides, before the hearing, the sheriff did execute in this case the order of March 3d, and Remley's appearance was in obedience to both the orders before he made answer.

3. Again, we hold that when he came before the Court in pursuance of the attachment nisi, he was not in a position to litigate on claims of credit, or discuss the merits or demerits of the demand. That question had been settled and he stood before the Chancellor on the naked issue of contempt of the Court, for non-compliance with its order. This question had first and primarily to be disposed of; the money which he held from the collection of the claims which were to be divided, was necessarily to be delivered under the order of the Court, before the contempt could be purged; and we add that the balance awarded him by the Auditor, falls within our view of the case, in the same sanctity of duty to pay over on his part, as the money collected on the divided account. It was his and under the order of the Court on the report of the Auditor, it was his right to have it promptly and

fully delivered to him. We therefore hold that the Court was right in granting the order and using its processes and powers of attachment to enforce it.

*4. Again, we say, in view of this case, that the order adjudging Remley in contempt, and ordering his arrest and confinement in jail until he complied with the order of the Court was not in conflict with the constitutional inhibition against imprisonment for debt. That provision declares— as a fundamental principle and declaration of right—that the person of a debtor shall not be detained in prison after delivery, for the benefit of his creditors, all of his estate not expressly exempted, by law, from levy and sale. In our view of this case, Remley does not stand in the place of a debtor. The order and decree against him was for the performance of a duty, arising out of the dissolution of the partnership, under orders of the Court, and invoked by consent of the parties, and or the discharge of which he stood amenable to the further orders of the Chancellor.

5. Again, we say, that in the exercise of this power by the Chancellor, Courts will reluctantly interfere, as all Courts must, as incident to their very existence, exercise discretionary judgments in matters of contempt. To make this power the capricious matter of other judicial interference elsewhere, would be to strike at the independence and integrity of the judicial office. Except the act be a flagrant abuse of the power, exhibiting, in its exercise, a clear violation of legal discretion, this Court will not interpose its arm to protect the offender who has drawn down upon himself its judgments.

In this case, holding as we do that the right to enforce, by attachment for contempt, the order under review, we see no abuse of the power, but, on the contrary, a forbearance which is almost, in its leniency, without a precedent or a parallel.

Judgment of the Court below affirmed.

---

*WILLIAM WEBB et al., plaintiffs in error, *v.* BEVERLY PARKER et al., defendants in error.

(Atlanta, January Term, 1871.)

NEW TRIAL—EQUITY—EVIDENCE—MISTAKE, SURPRISE AND MISPLACED CONFIDENCE.—The complainants allege that the counsel for the defendants told the counsel for the plaintiffs that they had a copy of the plat and grant to the lot of land in dispute, and that it would not be necessary for plaintiffs to obtain one, as the counsel for the defendants would furnish it on the trial; that relying upon this statement of the defendants counsel, the plaintiffs did not procure a copy of the grant; that upon the trial the counsel for the defendants, in pursuance of said agreement, did furnish what purported to be a copy of said original plat and grant, issued from the Secretary of State's office, remarking at the time, "here is a copy plat and grant—we make no point upon that;" the counsel for the plain-