### 18475.  MAYS *v.* WILLINGHAM, solicitor-general.

"Questions of contempt are for the court treated with the contempt; and its decision ought to be final, except, perhaps, in the case in which the decision shows an enormous abuse of the discretion." No abuse of discretion is shown in this case.

DECIDED DECEMBER 13, 1927.

Contempt; from Butts superior court—Judge Persons. August 24, 1927.

*H. M. Fletcher,* for plaintiff in error.

*Frank B. Willingham, solicitor-general,* contra.

BLOODWORTH, J.  A rule for contempt of court was filed against two parties who were defendants in a case in Butts superior court, and against the bailiff who had charge of the jury while the case was being tried. In some respects this rule is without a parallel in contempt cases. The bailiff had been acting in that capacity for that court from term to term for more than thirty years. One of the defendants to the case on trial, J. W. Mays, was charged with giving the jury a carton of cigarettes. The third of the trio who was ruled, Dr. J. R. Strickland, was a party to the case, and

Contempt, 13 C. J. p. 22, n. 21; p. 87, n. 50; p. 104, n. 19; p. 105, n. 36.

was not only a practicing dentist but also a member of the bar. The cigarettes were delivered by Mays to the bailiff practically in the presence of the jury, and this act was seen by some of them. The liquor the bailiff received from the hands of Dr. Strickland and delivered it to the jury in their room. It is rather a coincidence that Hon. G. Ogden Persons, who presided at the trial of the contempt case, and Hon. F. B. Willingham, who represented the State in that case, and the writer of this opinion, are all residents of the little city of Forsyth in Monroe county.

In the oral judgment pronounced by Judge Persons and incorporated in the record, he said in part: "I do not think any institution that the Anglo-Saxon race enjoys to-day is more important than the jury trial. It is the most sacred privilege that a citizen of this republic enjoys. Jury trial means that the rights which are guaranteed under the constitution of the United States and the constitution of the State of Georgia shall be protected. There is no other power which decrees the enforcement of these rights, but these rights can only be procured in the court-house where judges are sworn to enforce the law, and where jurors are sworn to enforce the law; and it is only by a verdict of the jury that we can protect life, liberty, and property in this republic under our form of government. . . And I say to these two men who are now arraigned before this court under this rule, that whenever the time comes that the sacredness of the jury-box will be invaded either directly or indirectly, or by any character of influence, whether of a criminal order or any other kind, justice will flee from this court-house, and no citizen who comes into this court-house will have any assurance that he is going to have a fair and impartial trial of his case before twelve true and impartial men, sworn to do their duty, whose oath shall be accepted by a court of justice."

The solicitor-general, in his brief, said in part: "The sole question is: Did the court commit error in holding Mays guilty of a contempt? We respectfully insist that the trial courts have always been given free rein in adjudging these questions. The judges of the superior courts are on the ground, familiar with conditions, aware of the local effect of the alleged contumacious acts, and, with all the facts fresh before them, are in position to deal justly and fairly. The case of *Cabot* v. *Yarborough*, 27 *Ga.*

476, has never been quoted except approvingly; the headnote is
as follows: 'Questions of contempt are for the court treated with
the contempt; and its decisions ought to be final, except, perhaps,
in the case in which the decision shows an *enormous* abuse of the
discretion.' In the case of *Howard* v. *Durand*, 36 *Ga.* 346, 358
[91 Am. D. 767], the Supreme Court said: 'It has often been
decided that the action of the superior courts in granting or re-
fusing injunctions will not be controlled, except when it may ap-
pear there has been a flagrant abuse of discretion. The same rule
should apply to the action of the courts relative to the punish-
ment of parties alleged to be contumacious. Whether a contempt
of court has been committed which should be punished, may gen-
erally be safely left to the discretion of the circuit judges. They
are not likely to fail in enforcing due respect to their orders; and
their action in such cases should be final, unless there is some-
thing in the decision to show a most flagrant abuse of the dis-
cretion. *Cabot* v. *Yarborough*, 27 *Ga.* 476.' See also *In re Fite*,
11 *Ga. App.* 665 [76 S. E. 397], for a full and clear elaboration
of the law governing such cases."

Under the law announced above and under the facts of the case,
the presiding judge did not abuse his discretion when he held
plaintiff in error guilty of contempt. "The majesty of the law
must be maintained; its mandates must be implicitly obeyed."

*Judgment affirmed. Broyles, C. J., and Luke, J., concur.*