39545. CRUDUP v. STATE OF GEORGIA.

DECIDED SEPTEMBER 27, 1962—
REHEARING DENIED NOVEMBER 8, 1962.

834

*John N. Crudup, Robert E. Andrews*, for plaintiff in error.
*C. E. Smith, Jr., Solicitor*, contra.

HALL, Judge. 1. In *Garland v. State of Ga.*, 99 Ga. App. 826, 832 (110 SE2d 143), this court held that a judgment of contempt must contain "factual holdings setting out the misconduct on the part of the attorney such as will disclose to a reviewing court the subject matter upon which the discretion of the trial court operated." The judgment in this case meets that test.

2. The reconciliation between an attorney's duty to maintain respect due the courts[1] and his duty to protect and advance the interests of his client[2] may prove to be at times difficult. Nevertheless, it is basic that even as to laymen ignorance of the law

---

[1]Canon 1, The Canons of Professional Ethics of the American Bar Association, states: "It is the duty of the lawyer to maintain towards the Courts a respectful attitude, not for the sake of the temporary incumbent of the judicial office, but for the maintenance of its supreme importance." Adopted by the Georgia Bar Association, May 29, 1947. Report, Georgia Bar Association, 1947, pp. 51, 151, 328.

[2]Canon 15, The Canons of Professional Ethics of the American Bar Association, states: "The lawyer owes 'entire devotion to the interest of the client, warm zeal in the maintenance and defense of his rights and the exertion of his utmost learning and ability,' to the end that nothing be taken or be withheld from him, save by the rules of law, legally applied. No fear of judicial disfavor or public unpopularity should restrain him from the full discharge of his duty. In the judicial forum the client is entitled to the benefit of any and every remedy and defense that is authorized by the law of the land, and he may expect his lawyer to assert every such remedy or defense. But it is steadfastly to be borne in mind that the great trust of the lawyer is to be performed within and not without the bounds of the law. The office of attorney does not permit, much less does it demand of him for any client, violation of law or any manner of fraud or chicane. He must obey his own conscience and not that of his client." Adopted by the Georgia Bar Association, May 25, 1947. Report, Georgia Bar Association, 1947, pp. 51, 151, 332.

is no excuse. *Code* § 102-105. Surely this applies with even greater force to an attorney who is a member of one of the three "learned professions." Accord, *Georgia State Bd. of Examiners in Optometry v. Friedman's Jewelers, Inc.*, 183 Ga. 669, 673 (189 SE 238). Few cases are found adjudicating the question of contempt by an attorney in disobeying the rulings of the court. We believe this indicates that generally lawyers and judges accord great respect to the authority, duties, and rights of each other and the vital role of each in the judicial process.

The act establishing the City Court of Hall County (Ga. L. 1890-91, p. 939, as amended by Ga. L. 1916, pp. 225, 228), provided that the court shall be a court of record, have the same rules of procedure and practice as the superior courts of the State unless otherwise provided in the act, and that the judge shall have the same power to enforce his orders, to preserve order, to punish for contempt and to enforce all his judgments as is vested by law in the judges of the superior courts of the State.

*Code* § 24-104 provides: "Every court has power—1. To preserve and enforce order in its immediate presence, and as near thereto as is necessary to prevent interruption, disturbance, or hindrance to its proceedings. . . 3. To compel obedience to its judgments, orders, and process, and to the orders of a judge out of court, in an action or proceeding therein. . . 4. To control, in furtherance of justice, the conduct of its officers and all other persons connected with a judicial proceeding before it, in every matter appertaining thereto." The power to punish contempts is inherent in every court of record (*Atlanta Newspapers, Inc. v. State of Ga.*, 216 Ga. 399 (1), 116 SE2d 580) and, under *Code* § 24-104, "every court, whether a court of record or not, has power to punish for contempt committed in its immediate presence." *Plunkett v. Hamilton*, 136 Ga. 72 (1) (70 SE 781, 35 LRA (NS) 583, AC 1912B, 1259); *Brooks v. Sturdivant*, 177 Ga. 514, 516 (170 SE 369); *Watson v. Dampier*, 148 Ga. 588 (1) (97 SE 519); Rapalje, Contempt, p. 1.[3] Rule 23 of the

---

[3]"We start with the premise that the right of courts to conduct their business in an untrammeled way lies at the foundation of our system of government and that courts necessarily must possess the means of punishing for contempt when conduct

Rules of the Superior Courts (*Code* § 24-3323) specifically provides: "No attorney shall ever attempt to argue or explain a case, after having been fully heard, and the opinion of the court has been pronounced, on pain of being considered in contempt."[4] Accord, 17 CJS 35, § 25(b). "The majesty of the law must be maintained; its mandates must be implicitly obeyed." *Mays v. Willingham,* 37 Ga. App. 478, 480 (140 SE 789).

Contempt of court has been variously defined; in its broad sense it means disregard for or disobedience of the order or command of the court, but "it also includes the interruption of the proceedings. . ." 12 Am. Jur. 389, Contempt, § 2. Contempt of court, as a punishable offense, is as old as the courts themselves. 4 Blackstone's Commentaries 284. This is especially true in the case of criminal contempt where the court exercises a disciplinary and summary jurisdiction over attorneys and other officers of justice. Fox, History of Contempt of Court 3, 156-157.[5] Care must be taken however to distinguish between cases of contempt in facie curiae and those involving an out-of-court statement. The latter involves the constitutionally guaranteed liberty of free expression and the power of courts to punish for such contempts is limited to cases in which there is a "clear and present danger to the administration of justice." *McGill v. State of Ga.,* 209 Ga. 500, 504 (74 SE2d 78); Wood v. Georgia, 370 U.S. 375 (82 SC 1364, 8 LE2d 569); Bridges v. California, 314 U.S. 252 (62 SC 190, 86 LE 192); Pennekamp v. Florida, 328 U.S. 331 (66 SC 1029, 90 LE 1295); Craig v. Harney, 331 U.S. 367 (67 SC 1249, 91 LE 1546). The former involves the inherent power of courts "to maintain order in their courtrooms and to

tends directly to prevent the discharge of their functions." Wood v. Georgia, 370 U.S. 375, 383.

[4]Rule 23 (*Code* § 24-3323) was present in the Code of 1910 as § 6265, was incorporated in the amendment of 1916 (Ga. L. 1916, pp. 225, 228) to the act establishing the City Court of Hall County and is applicable in the present case. *Chance v. State,* 97 Ga. 346 (23 SE 832).

[5]"The twentieth Article of John's Magna Carta does not extend to officers of justice, whose amercements are assessed by the Court and not by the jury."

assure litigants a fair trial . . ." Wood v. Georgia, 370 U.S. 375, 383, supra. It "is absolutely essential to the protection of the courts in the discharge of their functions." *White v. George*, 195 Ga. 465, 470 (24 SE2d 787). "As an incident to their being, courts must have the authority 'necessary in a strict sense'[6] to enable them to go on with their work. In doing their work, courts, like others, may encounter obstructions. They must, therefore, be vested with incidental powers of self-protection. . . . Some action is necessary to enable the court to proceed with its affairs. . . This manifestation of a court's activity is not a mystical emanation . . .; it is referable solely to the fact that a court has business at hand and must get on with it." Frankfurter and Landis, "The Power To Regulate Contempts", 37 Harvard Law Review, 1010, 1022. In summary, the interference with the immediate process of litigation may be treated by the presiding judge as a facie curiae contempt. Ex parte Terry, 128 U.S. 289 (9 SC 77, 32 LE 405).

Questions of contempt are for the court treated with contempt, and the trial court's adjudication of contempt will not be interfered with unless there is a gross, enormous, or flagrant abuse of discretion. *Salem v. State of Ga.*, 101 Ga. App. 905 (1) (115 SE2d 447); *Garland v. State of Ga.*, 101 Ga. App. 395, 401 (114 SE2d 176); *Cabot v. Yarborough*, 27 Ga. 476; *Remley v. DeWall*, 41 Ga. 466; *Hayden v. Phinizy*, 67 Ga. 758; *Warner v. Martin*, 124 Ga. 387 (52 SE 446, 4 AC 180); *Mays v. Willingham*, 37 Ga. App. 478, supra.

The judgment here shows that the contemnor attempted to recall a witness for the purpose of further cross-examination and that upon ascertaining the purpose of such recall the trial judge *ruled* adversely to the contemnor on this point, but stated that the witness could be called as a witness for the contemnor's client. The contemnor *insisted* upon recalling the witness for the purpose of further cross-examination. The trial judge *again ruled* adversely to the contemnor on the same question *and directed him to proceed with his defense.* The contemnor *again insisted* upon recalling the witness. The trial judge *again ruled*

---

[6]Holmes, J., in Craig v. Hecht, 263 U.S. 255, 280, 281 (44 SC 103, 68 LE 293).

for the *third time* adversely to the contemnor on the same question. The contemnor *again insisted* for the *third time* (after three previous rulings on the same question) upon recalling the witness. By virtue of the foregoing rules of law, and with specific reference to *Code* § 24-3323, and under the record in this case, we cannot say that the trial judge's adjudication of contempt was a gross, enormous or flagrant abuse of discretion. *Garland v. State of Ga.,* 101 Ga. App. 395, supra.[7]

The fact that the trial judge did not adjudicate the contemnor in contempt until after he had given him an opportunity to make a statement as to why he should not be held in contempt is of no consequence. Undoubtedly this delay was "a wise exercise of discretion . . . to allow the contemnor an opportunity to mitigate his offense by showing that no contempt was intended, or any other mitigating circumstances, except in cases where there would be no excuse for the action of the contemnor." *White v. George,* 195 Ga. 465, 470-471, supra; Ex parte Kearney, 7 Wheat. (20 U.S.) 38 (5 LE 391). "In all ordinary matters an advocate must, even more than ordinary persons, since he has a special privilege to practice law, conform himself to the usages of the Court and the rulings of the Judge." Oswald's Contempt of Court, pp. 54-55. Being an officer of the court, a member of a learned profession and fully cognizant of *Code* § 24-3323, the contemnor needed no specific warning to cease persisting in his argument in view of the three previous rulings of the court that the witness could not be recalled for further cross-examination. He needed no further protection for his client than an adequate record. Even if the trial judge was in error on his first ruling, it was the duty of counsel to abide by the first and subsequent rulings; and if any right of his client was violated, the remedy was by writ of error. "Any other procedure would result in mockery of our trial courts and would destroy every concept of orderly process in the administration

---

[7]Even the dissenting opinion (p. 421) in the *Garland* case concedes that "A lawyer is required by the rules of court to yield, without further argument, to any order or ruling of the judge in whose presence he is. Failure to do so is contempt."

of justice." Fisher v. Pace, 336 U.S. 155, 162 (69 SC 425, 93 LE 569).

We have not overlooked the case of In Re McConnell, 370 U.S. 230 (8 LE2d 434). It is not controlling here for the reason that it merely involved the "exercise of" the Supreme Court of the United States' "supervisory power" over inferior Federal courts. Furthermore it is distinguishable from the present question on several grounds.[8]

It matters not what we individually might have done under the circumstances if we were sitting as the trial judge. The trial judge has a wide discretion in regulating and controlling the business of the court and the conduct of the trial. *Atlanta Newspapers, Inc. v. Grimes,* 216 Ga. 74 (114 SE2d 421); *Bannister v. Hubbard,* 82 Ga. App. 813 (62 SE2d 761); *Jackson v. Moultrie Production Credit Assn.,* 76 Ga. App. 768 (47 SE2d 127). We have no discretion and must follow what Chief Justice Sir Edward Coke called the "straight mete-wand of the law."

We must also remember that ours is an adversary system and that the two opposing attorneys are partisan advocates. Confidence and power is reposed in the trial judge to administer the business of the court in a non-partisan manner. Such occurrences as we have in this case must be viewed as a unit in order to appraise properly the alleged misconduct. The relationship of the contemnor as an officer of the court must not be lost sight of and reliance must be placed upon the fairness and objectivity of the presiding judge. Fisher v. Pace, 336 U.S. 155, 161, supra;

---

[8]a. The Federal courts have no statute similar to *Code* § 24-3323.

b. There being no similar statute, the contempt was based on the alleged improper language of the attorney as being an actual obstruction of justice.

c. It is clear from In Re McConnell that the inferior Federal courts, as distinguished from Georgia courts of record, are "limited in contempt cases, to 'the least possible power adequate to the end proposed.'" P. 234.

d. There was a real issue in In Re McConnell as to whether it was necessary under the Federal Rules of Civil Procedure for the attorney to pursue the questioning which the judge had forbidden in order to perfect his record for appeal.

accord, *Garland v. State of Ga.*, 101 Ga. App. 395, 416-417, supra. It is axiomatic that, if we do not uphold the trial judges in this State in the proper exercise of their discretionary power to control recalcitrant attorneys, they will control our trial judges.

*Judgment affirmed. Carlisle, P. J., Bell, Frankum, Jordan, Eberhardt and Russell, JJ., concur. Felton, C. J., and Nichols, P. J., dissent.*

Felton, Chief Judge, dissenting. I have no quarrel with the very fine and studious opinion prepared by Judge Hall except that I wish that we could store it away and use it in a case where it is applicable to the facts, as I do not think is the case here.

The original contempt order, and that is the only one mentioned in the opinion, does not allege one single thing which Mr. Crudup did which was in the slightest degree contumacious or which tended in the remotest degree to obstruct the administration of justice. A mere reading of the order will prove this to be true. Mr. Crudup *stated* to the court three times what he wanted to do. The court, instead of telling Mr. Crudup not to make the statement again, kept on repeating what he had been saying and when Mr. Crudup repeated himself the fourth time, one time less than the judge, the judge asked Mr. Crudup if he had any reason to give why he should not be punished for contempt and Mr. Crudup said he was not in contempt. The court construed his last statement as adjudging Mr. Crudup in contempt and ruled that Mr. Crudup refused to purge the contempt after opportunity to do so. There was no judgment of contempt until the written order and the record does not show any refusal by Mr. Crudup to purge himself after opportunity. The attorney did not violate any direction of the court. He did not disobey any order because he did not call the witness again to the stand for the purpose of cross-examination after the judge ruled that he could not. I think that before the judge could hold Mr. Crudup in contempt he would have had to rule that he could not again make the request to call the witness for cross-examination. The court left the door open for two additional requests and I do not see how Mr. Crudup could have known the limit without

the judge's first telling him. The rule of court embodied in *Code* § 24-3323 has no application to the facts of this case and so far as appears from the record the judge did not base his order on it in whole or in part. The *McGill* case (209 Ga. 500, supra) means, in my opinion, that the Federal rule is about the same as Georgia's, and a recent opinion of the U. S. Supreme Court fits this case like a glove. The case is: In the Matter of Criminal Contempt of Thomas C. McConnell, 370 U.S. 230, supra. The opinion is as follows: "Mr. Justice Black delivered the opinion of the Court. The petitioner Thomas C. McConnell, a lawyer, was summarily found guilty of contempt of court for statements made while representing the Parmelee Transportation Company in an antitrust suit for treble damages and an injunction. The complaint charged that a number of defendants had unlawfully conspired to destroy Parmelee's business by restraining and monopolizing trade in violation of the Sherman Act. Petitioner and his co-counsel, Lee A. Freeman, had done extensive pretrial preparation on the issue of conspiracy which was the heart of their case. At the very outset of the trial, however, the district judge on his own motion refused to permit counsel to try to prove their conspiracy charge, holding that they must first prove in a wholly separate trial that defendants' actions had resulted in an economic injury to the public—an erroneous holding since we have held that the right of recovery of a plaintiff in a treble damage antitrust case does not depend at all on proving an economic injury to the public.

"Cut off by the judge's erroneous ruling from trial of the basic issue of conspiracy and wishing to provide a record which would allow this ruling to be reviewed by the Court of Appeals, counsel for Parmelee asked counsel for defendants to stipulate that plaintiff would have introduced certain evidence of conspiracy had it been allowed to do so. Defense counsel refused to stipulate, however, insisting that Parmelee's counsel prepare their record by following the procedure set out in Rule 43 (c) of the Federal Rules of Civil Procedure, which requires that before an offer of proof is made questions upon which the offer is based must first be asked in the presence of the jury. Unwilling to risk dismissal of their appeal for failure to follow Rule 43 (c),

Parmelee's counsel proceeded to produce and question witnesses in the presence of the jury in order to lay the proper foundation for their offers of proof of conspiracy. But during the process of this questioning the judge ordered it stopped and directed that any further offers of proof be made without first having asked questions of witnesses in the presence of the jury. This ruling placed Parmelee's counsel in quite a dilemma because defense counsel was still insisting that all offers of proof be made in strict compliance with Rule 43 (c) and there was no way of knowing with certainty whether the Court of Appeals would treat the trial court's order to dispense with questions before the jury as an excuse for failure to comply with the rule. Petitioner therefore not only sought to make clear to the court that he thought defense counsel's objection was 'right' but also repeatedly insisted that he be allowed to make his offers of proof in compliance with the Rule. Following the trial the judge charged petitioner and his co-counsel . . . in a number of specifications with being guilty of contemptuous conduct during the course of the trial. After separate hearings both lawyers were summarily found guilty by the trial judge on all specifications. Both appealed to the Court of Appeals, which reversed all of Freeman's convictions, reversed two of petitioner McConnell's convictions, but, with Judge Duffy dissenting, sustained the conviction of petitioner on Specification 6—the specification based on petitioner's insistence that he be allowed to make offers of proof in compliance with Rule 43 (c). Even as to this conviction, however, the Court of Appeals held that the jail sentence imposed by the trial judge should be reduced to a fine of $100. As in Offutt v. United States, the 'importance of assuring alert self-restraint in the exercise by district judges of the summary power for punishing contempt' prompted us to bring the case here.

"The statute under which petitioner was summarily convicted of contempt is 18 U. S. C. § 401, which provides that: 'A court of the United States shall have power to punish by fine or imprisonment, at its discretion, such contempt of its authority, and none other, as—(1) Misbehavior of any person in its presence or so near thereto as to obstruct the administration of justice. . .' This section is based on an Act passed in 1831 in order

to correct serious abuses of the summary contempt power that had grown up and was intended as a 'drastic delimitation . . . of the broad undefined power of the inferior federal courts under the Act of 1789,' revealing 'a Congressional intent to safeguard Constitutional procedures by limiting courts, as Congress is limited in contempt cases, to "the least possible power adequate to the end proposed." ' 'The exercise by federal courts of any broader contempt power than this,' we have said, 'would permit too great inroads on the procedural safeguards of the Bill of Rights, since contempts are summary in their nature, and leave determination of guilt to a judge rather than a jury.' And we held long ago, in Ex parte Hudgings, that while this statute undoubtedly shows a purpose to give courts summary powers to protect the administration of justice against immediate interruption of court business, it also means that before the drastic procedures of the summary contempt power may be invoked to replace the protections of ordinary constitutional procedures there must be an actual obstruction of justice: 'An obstruction to the performance of judicial duty resulting from an act done in the presence of the court is, then, the characteristic upon which the power to punish for contempt must rest. This being true, it follows that the presence of that element must clearly be shown in every case where the power to punish for contempt is exerted. . .' Thus the question in this case comes down to whether it can 'clearly be shown' on this record that the petitioner's statements while attempting to make his offers of proof actually obstructed the district judge in 'the performance of judicial duty.'

"The Court of Appeals answered this question by sustaining Specification 6 only on the basis of petitioner's last sentence in the colloquy set out in the specification. That specification reads: 'On April 27, 1960, in the presence and hearing of the jury, after the Court had instructed the attorneys for plaintiff to refrain from repeatedly asking questions on subjects which the Court had ruled was not admissible, in the presence of the jury as distinguished from an offer of proof outside the presence of the jury, the following occurred: "By Mr. McConnell: Now you are trying to tell us we can't ask these questions. We have a

right to ask these questions, and until we are stopped from asking these questions we are going to ask them, because it is in our prerogative in doing it. By the Court: I am now stopping you from asking the questions about conversations with Mr. Cross, because I have ruled specifically, definitely and completely that it is not an issue in this case. By Mr. McConnell: We have a right to ask them. By the Court: You can offer proof on it. By Mr. McConnell: We have a right to ask questions which we offer on this issue, and Your Honor can sustain their objection to them. *We don't have a right to read the answers, but we have a right to ask the questions, and we propose to do so unless some bailiff stops us.'* (Emphasis added.)

"The record shows that after this colloquy petitioner's co-counsel asked for a short recess, that following this recess petitioner did not continue to ask questions which the judge had forbidden and that in fact he did not ask any more such questions again throughout the remainder of the trial. We agree with Judge Duffy who dissented below that there was nothing in petitioner's conduct sufficiently disruptive of the trial court's business to be an obstruction of justice. It is true that petitioner stated that counsel had a right to ask questions that the judge did not want asked and that 'we propose to do so unless some bailiff stops us.' The fact remains, however, that the bailiff never had to interrupt the trial by arresting petitioner, for the simple reason that after this statement petitioner never did ask any more questions along the line which the judge had forbidden. And we cannot agree that a mere statement by a lawyer of his intention to press his legal contention until the court had a bailiff stop him can amount to an obstruction of justice that can be punished under the limited powers of summary contempt which Congress has granted to the federal courts. The arguments of a lawyer in presenting his client's case strenuously and persistently cannot amount to a contempt of court so long as the lawyer does not in some way create an obstruction which blocks the judge in the performance of his judicial duty. The petitioner created no such obstacle here.

"While we appreciate the necessity for a judge to have the power to protect himself from actual obstruction in the court-

room, or even from conduct so near to the court as actually to obstruct justice, it is also essential to a fair administration of justice that lawyers be able to make honest good-faith efforts to present their clients' cases. An independent judiciary and a vigorous, independent bar are both indispensable parts of our system of justice. To preserve the kind of trials that our system envisages, Congress has limited the summary contempt power vested in courts to the least possible power adequate to prevent actual obstruction of justice, and we think that that power did not extend to this case. Reversed."

When Mr. Crudup presented his bill of exceptions for certification the judge insisted on his including therein facts not stated in the first order of contempt and thereafter amended his first order, nunc pro tunc, without hearing or notice, as follows: "For the record in this case to be complete and sufficient for review and to specify with particularity the conduct of John N. Crudup, attorney at law, constituting the contempt of court, the judgment of contempt pronounced during the trial on February 23, 1962, at the February 1962 term of court and entered nunc pro tunc on February 26, 1962, for February 23, 1962, is now, during the same February 1962 term of this court, amended to complete and specify the record as follows: 1. The matters and things set forth in the judgment of contempt of court in the case of The State of Georgia versus John N. Crudup entered nunc pro tunc, now February 26, 1962, for then February 23, 1962, transpired during the public trial of The State of Georgia versus Marion Smith, the defendant being represented by John N. Crudup, attorney at law, and that same occurred on February 23, 1962, during the present February 1962 term of this court, and in said public trial and before a jury of twelve men, spectators in the courtroom, officers and attorneys, and before the trial judge. 2. Witness Fuller did not testify during the trial that a woman was in the car with the defendant at the time of the occurrence as contended by attorney John N. Crudup. Neither the State nor the defendant Marion Smith contended a woman was in the car with the defendant, and testimony on the subject was neither material nor relevant to any issue in the case and would neither

have aided nor harmed anyone. The repeated insistence of attorney John N. Crudup to recall witness Fuller and ask him what he testified while on the stand and if he didn't testify earlier in the trial that [a] woman was in the car with the defendant at the time of the occurrence was in repeated disobedience, resentment and resistance to the opinion and ruling of the court previously announced and made, that the witness could not be recalled for cross-examination and that the jury would know what he testified, and was a contempt of court by arguing and quarreling with the trial judge after the opinion and ruling of the court had been pronounced, and after attorney Crudup had been fully heard, and all of which was known to attorney Crudup and of which he was made fully aware by the court. Such conduct of attorney John N. Crudup was contemptuous and knowingly, wilfully and intentionally done to interfere with and impede the trial and in disrespect to the court and the court's rulings. 3. Said misbehavior and contempt of court by attorney John N. Crudup made necessary that he be then and there adjudged in contempt of court and punished in order that the trial judge could control the judicial proceedings and protect those proceedings from disruption, interference and obstruction during the trial, and in order to maintain respect for the court. 4. Said contempt of court by John N. Crudup was committed in the immediate presence of the court and in the immediate presence of a jury of twelve men, court officers, and spectators, during a public trial and was such conduct as tended to hold the court up to public ridicule. All rulings of the court were made in the presence of and known to attorney John N. Crudup; the judgment of contempt was made in his presence in the courtroom during the proceedings, the opportunity to purge himself of contempt was fully afforded him, and he declined to purge the contempt after opportunity. The court thereupon sentenced attorney John N. Crudup to pay a fine of ten dollars or serve three days in jail. This punishment was necessary and reasonable. Shortly thereafter and on the same day, February 23, 1962, attorney John N. Crudup came to the trial judge, stated he wanted to pay the ten dollar fine and asked if he could be granted time to go to his office to get the money. His request

was granted but the following day it became known he did not pay the fine. Attorney Crudup was requested to appear in court and he advised the court he wished to make a supersedeas bond and asked if he would be permitted to do so. The court assured him the request would be granted, and the court advised him the judgment would be written up and that a record would be made for his appeal. 5. The judgment of contempt and punishment was necessary in the administration of justice and to maintain decorum and respect for the court and was used only in the exercise of a sound judicial discretion and only with the utmost sense of responsibility and circumspection. The trial judge afforded attorney John N. Crudup an opportunity to purge himself of contempt or to offer an explanation or extenuation of his misbehavior and contemptuous conduct. Although the contempt was knowingly, wilfully and intentionally committed in the immediate presence, sight, and hearing of the court, the trial judge nevertheless in the exercise of a sound judicial discretion and with the utmost sense of responsibility and circumspection inquired if he had any reason to give why he should not be punished for the contempt. Attorney Crudup refused to speak in explanation, mitigation or extenuation of his contemptuous conduct but stubbornly and defiantly spoke in resentment and defiance of the court by arguing that he was not in contempt of the court. 6. The proceedings were not reported by a court stenographer but the facts, rulings, orders, decisions and proceedings recorded, reported and shown in the judgment of contempt signed nunc pro tunc February 26, 1962, for February 23, 1962, and the facts, rulings, order, decisions, and proceedings recorded, reported and shown herein, are all within the personal knowledge of the trial judge and are true. 7. The February 1962 term of the City Court of Hall County, Georgia, is still open and the record in this case is being completed during the same term the contempt proceedings occurred. This amendment of the judgment signed nunc pro tunc is dated and signed on March 24, 1962. /s/ Joseph H. Blackshear, Judge City Court, Hall County, Georgia."

The second order is null and void as the majority evidently considered it. The original contempt judgment is erroneous for the reasons stated. I dissent from the judgment of affirmance.

Nichols, P.J., concurs in the dissent.