A90A0329, A90A0712. IN RE BOOKER (two cases).
(394 SE2d 791)

SOGNIER, Judge.

James Booker, an attorney licensed to practice in this State, appeals from an order of the Superior Court of Clayton County finding him in contempt of Court. It appearing that case nos. A90A0329 and A90A0712, filed and docketed separately because of an error of the trial court clerk, present the same matters for review, the two appeals are consolidated in this opinion. We now affirm.

The record reveals that on Monday, May 8, 1989, appellant appeared before Judge William H. Ison at a calendar call in Clayton County Superior Court as attorney for a criminal defendant. Appellant announced ready for trial, but informed the court that if his case was not reached on that day he would be ready for trial again on Wednesday, May 10, 1989, asking to be excused on Tuesday, May 9, 1989, because of his tentatively scheduled meeting that day in Milledgeville with several out of state prosecutors in regard to a federal matter. Judge Ison instructed appellant to remain in the courtroom and check back with him at the conclusion of the calendar call, when the court would have a better idea of which cases would actually be tried and where appellant's case would fall on the calendar. Judge Ison then proceeded with the calendar call, and at its conclusion inquired as to the whereabouts of appellant, but appellant had left and could not be located.

It is uncontroverted that appellant left Judge Ison's courtroom on Monday, May 8, 1989, and made preparations to go to Milledgeville. Appellant actually departed Atlanta late Monday night or early Tuesday morning, driving a Rolls Royce automobile he had recently purchased. The meeting in Milledgeville was concluded at about 3:00 p.m. on Tuesday. However, having noticed a problem with the brakes, appellant decided to drive the Rolls Royce to a dealer in Hilton Head, South Carolina for repair, although he had purchased the car from an Atlanta dealer. Appellant drove to Hilton Head from Milledgeville without informing his office. Upon his arrival that evening he was informed that the dealership could make no repairs until the next day.

Appellant's client's case was not reached on Monday, May 8th, or Tuesday, May 9th, but Tuesday afternoon Judge Ison's secretary called appellant's office and notified appellant's secretary that appellant's client's case would be reached at 9:00 a.m. Wednesday. Appellant's secretary, still thinking appellant was in Milledgeville, said she

would try to reach him, but was unable to do so. Appellant's case was called for trial in Judge Ison's courtroom on Wednesday morning. Appellant was not present, but the defendant, the prosecutor, and several jury panels were there ready to proceed with the case, and an employee of appellant's office, apparently still unaware that appellant was in Hilton Head, was present and informed the court that appellant had been detained on a federal matter in Milledgeville. Judge Ison also called appellant's office and was told simply that appellant was not in. When appellant finally contacted his office late Wednesday morning and was apprised of the problem, he called Judge Ison from Hilton Head, where his car was still being repaired. Judge Ison informed appellant during that telephone conversation that he would hold the case for trial until 1:30 p.m., and ordered appellant to be present. When appellant responded that it was impossible for him to be there at that hour, Judge Ison informed him that a warrant would be issued for his arrest, whereupon Judge Ison issued an attachment for contempt.

Appellant did not appear before Judge Ison either at 1:30 on Wednesday or for more than a week thereafter, but filed a notice of appeal from Judge Ison's order of attachment, seeking emergency relief from this court. We dismissed that appeal for want of jurisdiction on May 17, 1989. On May 19, 1989, nine days after the attachment was issued, appellant presented himself to Judge Ison, who set a rule nisi for the following month on a petition for contempt drawn by the prosecutor, and ordered that appellant be booked and released upon payment of a $1,000 appearance bond. Appellant spent approximately three hours in jail.

Appellant filed a motion to recuse Judge Ison from presiding over the contempt hearing, which was granted, and on July 13 and 14, 1989, a hearing on the petition for contempt was held before Judge Stephen E. Boswell in Clayton Superior Court. Both appellant and the State presented extensive evidence. Judge Ison and appellant testified, giving sharply conflicting testimony about the events on May 8th, the day of the calendar call, particularly as to whether appellant ever spoke with Judge Ison privately and received permission to leave the courtroom, but agreeing about the facts concerning the telephone call on May 10th. Judge Boswell entered an order on August 22, 1989, finding appellant in contempt of court and allowing appellant to purge himself of contempt "by abiding by the Orders of the Judges of the Courts of this State and conduct[ing] himself honestly, justly and uprightly demean[ing] himself as an attorney, counselor and solicitor of the Courts of this State from this day forward."

1. In three enumerations of error, appellant contends it was error for Judge Ison to issue an attachment for contempt without first scheduling a hearing, because the contumacious conduct complained

of was an indirect, rather than a direct, contempt, and thus violated his right to due process. We find no merit in this contention and we find that the procedure followed sub judice more than comported with the required due process.

In view of the evidence that two jury panels and all parties other than appellant were present in the courtroom on May 10th ready to try the case and were unable to proceed because of appellant's absence, there is no question that appellant's refusal to appear when ordered to do so interfered with the functioning of the court and the administration of justice. See *Shafer v. State*, 139 Ga. App. 360 (2) (228 SE2d 382) (1976). "[C]ourts necessarily must possess the means of punishing for contempt when conduct tends directly to prevent the discharge of their functions." *Wood v. Georgia*, 370 U. S. 375, 383 (82 SC 1364, 8 LE2d 569) (1962). Moreover, appellant had, within the actual sensory perception of Judge Ison, i.e., in the May 10th telephone conversation, failed to comply with a direct order of the judge to appear for trial at a certain time, which conduct constituted a direct contempt. See Johnson & Reaves, Contempt of Court in Ga., 23 Ga. St. B.J. 66, 68 (1986). Accordingly, Judge Ison would have been justified in *punishing* that contumacious conduct summarily and without a hearing. " 'It is a settled doctrine in the jurisprudence both of England and of this country, never supposed to be in conflict with the liberty of the citizen, that for direct contempts committed in the face of the court, at least one of superior jurisdiction, the offender may, in its discretion, be instantly apprehended and immediately imprisoned, without trial or issue, and without other proof than its actual knowledge of what occurred. . . .' [Cit.]" *Garland v. State*, 99 Ga. App. 826, 831 (2) (110 SE2d 143) (1959). Because summary punishment would have been proper, we cannot agree with appellant that the procedure used here, which afforded him written notice and a hearing lasting several days at which extensive evidence was introduced, offended the requirements of due process. Appellant complains of the fact that he was arrested and required to post an appearance bond. Although we do not condone their routine use, under the circumstances present here we find those measures justified by appellant's unexplained (or misleadingly explained) absence and his failure to turn himself in and appear before Judge Ison for nine days during which he knew the attachment was outstanding.

2. Appellant characterizes his arrest and the three-hour period he spent in jail during the booking process as "punishment," and claims that the trial court erred by denying his motion to dismiss the petition for contempt because it placed him in double jeopardy. Under the facts set forth in Division 1, supra, we find no violation of the prohibition against double jeopardy here, as appellant's arrest was a regular and proper part of the procedure for insuring his presence at

the hearing, and not a punishment after an adjudication of contempt.

3. Appellant asserts the trial court erred by denying his demand for a bill of particulars. However, "[a]ppellant does not cite, and this court is unaware of, any applicable statute or law authorizing the grant of such a motion in a state [proceeding]." *Megar v. State*, 144 Ga. App. 564 (3) (241 SE2d 447) (1978). Moreover, the record shows that although the motion referred to by appellant was captioned "Demand For Particulars To Prepare A Defense," it was, in fact, a motion to dismiss the contempt proceeding.

The record supports the trial court's finding that the petition was sufficiently clear in that it did not mislead appellant and it "[set] out the grounds of contempt and [gave appellant] notice of the allegations and date of the Rule Nisi."

4. Appellant maintains the evidence was insufficient to support a finding of contempt beyond a reasonable doubt. We need not decide whether this proceeding was actually a civil, rather that a criminal, contempt action (the imposed sanction being remedial in nature, rather than punitive, *Davis v. Davis*, 138 Ga. 8 (1) (a) (74 SE 830) (1912)), thus making the appropriate standard the preponderance of the evidence, rather than beyond a reasonable doubt, because we find that the evidence presented at the hearing more than sufficiently authorized the trial court's finding that appellant was guilty of contempt of court even using the higher standard of beyond a reasonable doubt. "Contempt of court has been variously defined; in its broad sense it means disregard for or disobedience of the order or command of the court, but 'it also includes the interruption of the proceedings. . . [.]' [Cit.]" *Crudup v. State*, 106 Ga. App. 833, 837 (129 SE2d 183) (1962), aff'd 218 Ga. 819 (130 SE2d 733) (1963). In the case at bar it is undisputed that after announcing "ready" appellant failed to appear for a trial, thereby interfering with the functioning of the court. Despite appellant's proffered explanation, the trial court was authorized to find that appellant's conduct caused the delay, in that he failed to keep in touch with either his office or the court and chose to drive to a distant location while on call for a trial.

Further, although the evidence was in conflict, Judge Ison testified that he never excused appellant from the calendar call, and thus the trial court was authorized to find that appellant disregarded Judge Ison's direct order by leaving the courtroom on Monday, May 8, 1989. "When the evidence is viewed in the light most favorable to the 'prosecution,' any rational trier of fact could have found the essential elements of appellant's commission of a . . . contempt of court beyond a reasonable doubt." *In re Bergin*, 178 Ga. App. 454, 455 (343 SE2d 743) (1986).

5. Appellant contends the sentence imposed by the trial court is violative of OCGA § 15-6-8 (5), which provides that superior courts

have authority "[t]o punish contempt by fines not exceeding $500.00 and by imprisonment not exceeding 20 days." It appears that in this enumeration appellant is complaining that he was neither fined nor incarcerated after the adjudication of contempt, but instead was "sentenced" by the trial court's order to conduct himself properly as an attorney. It is elementary that to warrant reversal, harm as well as error must be shown, *Blanton v. State*, 191 Ga. App. 454, 455 (2) (382 SE2d 133) (1989), and we fail to see harm to appellant even should we concede error exists. Moreover, appellant fails to recognize that what he deems his "sentence" in the trial court's order is actually the method by which appellant may *purge* himself of the contempt. Nothing in OCGA § 15-6-8 (5) prohibits such an order.

6. We have carefully reviewed appellant's remaining enumerations of error and find them without merit.

*Judgment affirmed. Carley, C. J., and McMurray, P. J., concur specially.*

McMURRAY, Presiding Judge, concurring specially.

While I agree with the judgment and most of the supporting reasoning of the majority, I am unable to concur with all that is stated in Division 1. According to the citation for contempt under which appellant was tried, the contumacious conduct occurred on May 8, 1989, when appellant failed to remain in the courtroom until the conclusion of the calendar call in order to resolve a potential scheduling conflict. Appellant was also charged with failing to return to court when specifically directed to do so by the trial court. This apparently relates to appellant's failure to comply with Judge Ison's direction by telephone on May 10, 1989.

Judge Boswell's order found appellant in contempt for two reasons, the failure to remain in the courtroom as directed by Judge Ison on May 8, 1989, and appellant's failure to appear and be ready for trial after announcing ready for trial. See *In re Sykes*, 151 Ga. App. 233 (259 SE2d 215). I do not read Judge Boswell's order as being predicated upon any failure of appellant to comply with the telephone directions of May 10, 1989. Indeed, the evidence suggests that compliance may have been physically impossible. Consequently, I do not concur with the language in Division 1 which appears to approve of the procedure utilized on the basis that summary punishment for appellant's failure to comply with the order given during the telephone conversation would have been proper. Nonetheless, under the circumstances of the case sub judice, there was no error in the attachment of appellant so as to permit the trial court to inquire as to the cause of his unauthorized departure and continued absence. See *Martin v. Waters*, 151 Ga. App. 149, 150 (2) (259 SE2d 153).

Additionally, in Division 5 the majority has stated that which ap-

pellant has deemed as his punishment is actually the method by which appellant may purge himself of the contempt. Although perhaps implicit in the majority's statement I would, in the interest of clarity, add that no punishment has been imposed under Judge Boswell's order which appellant will avoid by purging himself of contempt. Nor is there any punishment of any kind imposed against appellant.

I am authorized to state that Chief Judge Carley joins in this special concurrence.

DECIDED MAY 9, 1990.

*James Booker*, pro se.
*Dwight L. Thomas*, for appellant.
*Robert E. Keller, District Attorney, Clifford A. Sticher, Assistant District Attorney*, for appellee.